1  Richard M. Pachulski (CA Bar No. 90073)
   rpachulski@pszjlaw.com
2  Harry D. Hochman (CA Bar No. 132515)
   hhochman@pszjlaw.com
3  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
4  Los Angeles, California 90067-4003
   Telephone: 310-277-6910
5  Facsimile:  310-201-0760

6  Attorneys for Civic Real Estate Holdings III,
   LLC

7

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                    **SANTA ANA DIVISION**

12 In re                              Case No. 8:25-bk-12181-SC

13 CSPRF 2, LLC,                       Chapter 11

14        Debtor.                      **REQUEST FOR JUDICIAL NOTICE IN
                                       SUPPORT OF MOTION OF CIVIC REAL
15                                     ESTATE HOLDINGS III, LLC FOR
                                       RELIEF FROM THE AUTOMATIC STAY
16                                     AND FOR SANCTIONS FOR BAD FAITH
                                       FILING**

17                                     **[Application for Order Shortening Time for
                                       Hearing Filed Herewith]**
18

19                                     Date:     TBD
                                       Time:     TBD
20                                     Judge:    Hon. Scott C. Clarkson

21

22        Creditor Civic Real Estate Holdings III, LLC ("Civic") requests pursuant to Federal Rule

23 of Evidence 201 that the Court take notice of the following documents attached as Exhibits hereto

24 in support of the *Motion of Civil Real Estate Holdings III, LLC for Relief From the Automatic Stay

25 and For Sanctions For Bad Faith Filing*:

26        1.    *Order (1) Sua Sponte Abstaining; (2) Dismissing Chapter 11 Case; and (3)

27 Vacating Related Hearing*, entered May 19, 2025 as D.I. 119 in the chapter 11 case of *In re

28 Chantilly Road, LLC*, Case No. 8:24-bk-13197-TA.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2.      *Order Sua Sponte Abstaining and Dismissing Involuntary Petition*, entered July 17, 2025 as D.I. 27 in the involuntary chapter 7 case of *In re Chantilly Road, LLC*, Case No. 8:25-BK-11409-SC.

3.      *Voluntary Petition*, filed by CSPRF 2, LLC on July 18, 2025, commencing Chapter 11 Case No. 25-11348 (CTG) (Bankr. D. Del.).

4.      *Order Granting Emergency Motion of Civic Real Estate Holdings III, LLC for Entry of an Order Dismissing Chapter 11 Case or, in the Alternative, Transferring Venue to Central District of California*, entered July 25, 2025, (D.I. 13 in the case of *In re CSPRF 2, LLC*, Case No. 25-11348 (CTG).

5.      Public Sale Report of foreclosure sale conducted July 29, 2025, in which Debtor was the successful bidder for a credit bid of $3,375,938.77.

6.      *Notice of Motion and Motion for Relief From the Automatic Stay Under 11 U.S.C. § 362*, filed by Civic on July 8, 2025 as D.I. 13 in the involuntary chapter 7 case of *In re Chantilly Road, LLC,* Case No. 8:25-BK-11409-SC.

Dated:  August 8, 2025                    PACHULSKI STANG ZIEHL & JONES LLP


                                          By    */s/ Richard M. Pachulski*
                                                Richard M. Pachulski
                                                Harry D. Hochman
                                                Attorneys for Civic Real Estate Holdings III, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT 1



FILED & ENTERED

MAY 19 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>Chantilly Road, LLC,<br><br><br><br><br><br>                    Debtor. | Case No.: 8:24-bk-13197-SC<br><br>CHAPTER 11<br><br>**ORDER (1) SUA SPONTE ABSTAINING;**<br>**(2) DISMISSING CHAPTER 11 CASE; AND**<br>**(3) VACATING RELATED HEARING**<br><br>Date:      May 22, 2025<br>Time:      11:00 a.m.<br>Courtroom:  5C |

The Court has considered the Motion to Dismiss Case Pursuant to 11 U.S.C.
Section 1112(b)(1) [Dk. 29] (the "Motion to Dismiss") filed on January 14, 2025 by
CSPRF 2, LLC ("Creditor"), the Opposition to Motion to Dismiss [Dk. 75] filed on
February 21, 2025 by Chantilly Road, LLC ("Debtor"), the Notice of Joinder in Debtor's
Opposition to Motion to Dismiss [Dk. 76] filed by creditors Creative Art Partners, LLC,
Martin Simone, Simone & Roos, LLP, Macoy Capital Mortgage, LLC, and Allstate
Lending Group, Inc., and the Reply to Debtor's Opposition to Motion to Dismiss Case
Pursuant to 11 U.S.C. Section 1112(b)(1) [Dk. 77], and the docket as a whole, and has
determined that this matter is appropriate for disposition without a hearing.  Based upon

the documents and pleadings filed in this case and the record as a whole, and for good cause shown, the Court finds that this case is appropriate for the Court to exercise its discretion to ABSTAIN, DISMISS this chapter 11 case and VACATE the hearing on the Motion to Dismiss.

## I.    Introduction

A voluntary case is commenced by the filing of a bankruptcy petition by an entity that may be a debtor. 11 U.S.C. § 301.  State law determines who has the authority to file a bankruptcy petition on behalf of a debtor. *Price v. Gurney*, 324 U.S. 100, 106-107 (1945).  Debtor's sole member, Leviathan, LLC ("Leviathan"), was formed under California state law.  California Corporations Code §§ 17704.07(b)(1) and (c)(1) vest decision-making authority in the LLC's members or managers.  The California Corporations Code further provides that consent of all members is required to act on behalf of the limited liability company outside the ordinary course of business. *See*, Cal. Corp. Code §§ 17704.07(b)(4), (c)(4).  California's Revised Uniform Limited Liability Company Act, which governs Debtor, provides that the operating agreement governs the relations of its members and the activities of the limited liability company.

Creditor argues that the filing of Debtor's Chapter 11 petition should be dismissed because (1) Leviathan's operating agreement vests control of Debtor solely in Creditor, as Debtor's sole authorized member, and David Blatt, as Debtor's sole authorized manager; and (2) neither Creditor nor David Blatt authorized the filing of this Chapter 11 petition.  Debtor argues that Adrian Rudomin was fully authorized to file for Chapter 11 protection on behalf of Debtor because the UCC sale of the membership interests in Leviathan were invalid.

Creditor has made a sufficient showing that the bankruptcy petition was filed without proper authority.  It is this Court's view that this dispute should be adjudicated in an alternate venue (i.e., California Superior Court) based on Creditor's ability to seek relief in the State Court, in the form of an injunction, to return Chantilly Road, LLC to the

1    status quo ante.  Accordingly, this Court permissibly ABSTAINS and this bankruptcy

2    case should be and is DISMISSED.

3    **II.    Analysis**

4    **1.    Abstention is appropriate.**

5    This Court recognizes that abstention is the exception, not the norm.  *See County*

6    *of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959); *Eastern Airlines, Inc.*

7    *v. Int'l Assoc. of Machinists & Aerospace Works (In re Ionosphere Clubs, Inc.)*, 108 B.R.

8    951, 954 (Bankr. S.D.N.Y. 1989).  However, permissive abstention is appropriate in

9    certain circumstance, as contemplated by 28 U.S.C. § 1334(c)(1):

10    Except with respect to a case under chapter 15 of title 11, nothing in this section
       prevents a district court *in the interest of justice, or in the interest of comity with*
11    *State courts or respect for State law*, from abstaining from hearing a particular
       proceeding arising under title 11 or arising in or related to a case under title 11.
12

13    28 U.S.C. § 1334(c)(1) (emphasis added).

14    In considering whether permissive abstention is appropriate, courts have

15    considered one or more (not necessarily all) twelve factors.  As one court notes,

16    "[a]lthough the bankruptcy court should consider all twelve factors, one should not be

17    beguiled into a false sense that a head count will yield the answer with mathematical

18    certainty." *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 928

19    (Bankr. E.D. Cal. 1995).  These factors are:

20    (1) the effect or lack thereof on the efficient administration of the estate if a court
       recommends abstention, (2) the extent to which state law issues predominate
21    over bankruptcy issue, (3) the difficulty or unsettled nature of the applicable state
       law, (4) the presence of a related proceeding commenced in state court or other
22    non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. §
       1334, (6) the degree of relatedness or remoteness of the proceeding to the main
23    bankruptcy case, (7) the substance rather than the form of an asserted 'core'
       proceeding, (8) the feasibility of severing state law claims from core bankruptcy
24    matters to allow judgments to be entered in state court with enforcement left to
       the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood
25    that the commencement of the proceeding in a bankruptcy court involves forum
       shopping by one of the parties, (11) the existence of a right to a jury trial, and
26    (12) the presence in the proceeding of non-debtor parties.
27

28

1  *Eastport Assocs. V. City of Los Angeles*, 935 F.2d 1071, 1075 (9th Cir. 1991);

2  *Christensen v. Tucson Estates, Inc. (In re Tucson Estate, Inc.)*, 912 F.2d 1162, 1167

3  (9th Cir. 1990).

4      The Court has considered the relevant factors and determined that the factors

5  weigh heavily in favor of abstention. There is no question that the issues underlying

6  Creditor's foreclosure on pledged membership interests in Leviathan involve purely

7  state law matters and based on Creditor's ability to seek an injunction, the Court simply

8  sees no benefit in delaying Creditor's efforts to return Chantilly Road, LLC to the status

9  quo ante.  In this Court's experienced view, an alternative proceeding beginning at the

10  State Court level rather than the Bankruptcy Court, would lead to a faster and more

11  cost-effective resolution for those involved.

12        **2.    The Court makes no determination on the assertions under 11**

13          **U.S.C. § 1112(b)(1).**

14      Because this Court has exercised its jurisdiction to abstain, it need not, and does

15  not, make any determination regarding the assertions in the Motion to Dismiss that

16  there is cause for dismissal under 11 U.S.C. § 1112(b)(1).

17      **III.    Conclusion**

18      In light of the foregoing, after having reviewed the Motion to Dismiss and related

19  pleadings, and the docket as a whole, the Court finds that the relevant factors weight

20  heavily in favor of this Court exercising its discretion to ABSTAIN, and so finds good

21  cause to DISMISS the case and VACATE the hearings on the Motion and all remaining

22  pending matters.

23      **IT IS SO ORDERED.**

24

25     Date: May 19, 2025

                                        Scott C. Clarkson
26                                   United States Bankruptcy Judge

27

28

# EXHIBIT 2

1
2
3
4
5
6
7



FILED & ENTERED

JUL 17 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

8

**UNITED STATES BANKRUPTCY COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**SANTA ANA DIVISION**

11
12
13   In re:

Case No.: 8:25-bk-11409-SC

14   Chantilly Road, LLC,

CHAPTER 7

15

**ORDER SUA SPONTE ABSTAINING AND
DISMISSING INVOLUNTARY PETITION**

16
17

Date:        July 15, 2025
Time:        11:00 AM
Courtroom: 5C

18                                     Debtor(s).

19
20        On July 15, 2025, the Court conducted a status conference on the involuntary

21   petition filed May 25, 2025. Appearances are as noted in the record.

22        Having fully considered the docket as a whole, as well as the docket in the

23   related Chapter 11 case, 8:24-bk-13197-TA, the oral arguments at the July 15, 2025

24   hearing, and for the reasons set forth on the record and discussed below, the Court

25   finds that the relevant factors weigh in favor of this Court exercising its discretion to

26   ABSTAIN from this proceeding and hereby DISMISSES the involuntary petition.

27
28

## Introductory Statement

Consideration of the Abstention Doctrine has sometimes caused courts to analyze whether they are frivolously abdicating their role and jurisdiction in bankruptcy cases. *See, e.g., In re Nina Merchandise Corp.*, 5 B.R. 743 (J. Burton R. Lifland, Bank. S.D.N.Y. 1980). This Court undertakes its duties of exercising jurisdiction in a very serious manner, and it is quite cognizant of the long, winding, and significant Bankruptcy Code jurisdictional road, from the passage of the Bankruptcy Code in 1978 (11 U.S. Code § 101, et seq.), to *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), to *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), to *Stern v. Marshall*, 564 U.S. 462 (2011). But a simple application of the abstention factors in this case assuages the Court of these concerns.

## Background[1]

This involuntary proceeding was commenced against the alleged debtor, Chantilly Road, LLC ("Alleged Debtor" or "Chantilly") on May 25, 2025 by Petitioning Creditors, Creative Art Partners, LLC, Martin Simone, Frank & Simone LLP, Macoy Capital Mortgage, LLC, and Allstate Lending Group, Inc. (collectively, "Petitioning Creditors"). The Alleged Debtor filed an Answer on June 23, 2025 [Dk. 9]. The discussion at the status conference revealed that Chantilly was is owned by Leviathan LLC ("Leviathan") and managed by The Kraken, LLC.  David Blatt is the manager of both Leviathan and The Kraken, LLC.

The case was commenced days after the May 19, 2025 dismissal of Chantilly's prior Chapter 11 case, 8:24-bk-13197-TA. In the Chapter 11 case, when faced with a corporate ownership dispute, the Court abstained and dismissed the Chapter 11 proceeding. *See* order entered May 19, 2025 as Dk. 119 in Case No. 8:24-bk-13197-TA. The Chapter 11 case was filed by a different faction, represented by Adrian Rudomin, asserting ownership of Chantilly. At the hearing, CSPRF 2, LLC's counsel

---

[1] The information set forth in this section is obtained from the Court's review of the entirety of the docket in this case, as well as that in the prior Chapter 11 case and from the representations made on the record at the July 15, 2025 status conference.

1   represented that there exists a pending state court proceeding between Mr. Rudomin

2   and CSPRF 2, LLC, with involvement by a couple of the petitioning creditors.

3          At its core, the dispute surrounds luxury real property located at 1116 Chantilly

4   Road, Los Angeles, CA 90077 ("Property") and the various stakeholders' attempts to

5   recover on their claims. There are limited unsecured claims.

6          There are three secured obligations upon the property, once of which is CSPRF

7   2, LLC. Mr. Blatt is also the manager of CSPRF2, LLC. Another is Civic Real Estate

8   Holdings III, LLC ("Civic"). The third secured creditor is Allstate Lending Group, Inc.

9   ("Allstate Lending," one of the petitioning creditors herein and either fully or partially out

10  of the money). Both CSPRF2, LLC and Civic have filed motions for relief from stay

11  ("RFS") [Dks. 7 and 13]. In its Motion for RFS, CSPRF 2 alleges that the Property is

12  worth $21 million and that Civic, the holder of the First DOT, is owed approximately

13  $17,598,889,80 and that it, as the Second DOT secures a claim of approximately

14  $3,376,938.77. In the Civic RFS, Civic alleges that the $21 million valuation is "over-

15  optimistic" and that any equity it may possess may have already dissipated. Civic notes

16  the "reduction of the listing price from $22,495,000 to $21,000,000 prior to dismissal of

17  the chapter 11 case" and alleges that it is owed $17,888,377.58. Further, Civic points

18  out that it "has been stymied from proceeding to foreclosure" first by the voluntary

19  Chapter 11 and then the filing of this involuntary proceeding.

20         Based on the foregoing, CSPRF 2 (managed by Mr. Blatt) asserts that the First

21  DOT and the Second DOT (held by Civic) exhaust all equity in the Property before

22  considering the Third DOT (held by Allstate Lending) which secures an approximate

23  $2.5 million claim. In other words, CSPRF 2 explicitly takes the position that Chantilly is

24  insolvent, a position contrary to that of the Alleged Debtor (also managed by Mr. Blatt).

25         The pleadings in this case, as well as in the Chapter 11 case, are rife with

26  allegations of self-dealing, improper conduct, and corporate ownership disputes.

27

28

## Discussion

## The Legal Standard Governing Abstention pursuant to 11 U.S.C. Section 305

Section 305 of the Bankruptcy Code grants Bankruptcy Courts significant discretion to decline exercising jurisdiction over a bankruptcy case, providing that after notice and a hearing the bankruptcy court may dismiss or suspend a bankruptcy proceeding "at any time" if "the interests of creditors and the debtor would be better served by dismissal or suspension." 11 U.S.C. § 305(a).

> As noted by the Ninth Circuit Bankruptcy Appellate Panel ("B.A.P."):
> As the statutory language and legislative history demonstrate, the test under § 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor and the creditors would be 'better served" by a dismissal.

*Eastman v. Eastman (In re Eastman),* 188 B.R. 621, 625. *See also Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 246 (9th Cir. B.A.P. 2007) (where the B.A.P. affirmed the dismissal of an involuntary petition pursuant to § 305(a), noting that such dismissal may be appropriate even when the involuntary petition may otherwise satisfy the requirements of Section 303).[2]

Whether "the interests of creditors and the debtor would be better served by such dismissal" requires a court to analyze the "totality of the circumstances." *In re Macke*, 370 B.R. at 247 (citing *Eastman*, 188 B.R. at 624). "Before a court may refrain from exercising jurisdiction over an otherwise proper case, it must make specific and substantiated findings that the interests of the creditors and the debtor will be better served by dismissal or suspension." *Id.*

---

[2] § 303 states in pertinent part: (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title– (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, the undisputed claims aggregate at least $18,600 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims; (2) if there are fewer than 12 such holders, by one or more of such holders that hold in the aggregate at least $18,600. 11 U.S.C. § 303.

There exists no specific statutory reference to guide a Bankruptcy Court in its analysis; however, the Ninth Circuit has applied the following seven factors used by the B.A.P. in *Marciano*[3] to determine whether abstention is appropriate under § 305 (a) for an involuntary petition:

> (1)     the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re Marciano*, 459 B.R. 27, 46–47 (B.A.P. 9th Cir. 2011) (first citing *In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 464–65 (Bankr.S.D.N.Y.2008), then citing *In re Paper I Partners, L.P.*, 283 B.R. at 678 ("§ 305(a) Factors")).[4] Dismissal is an 'extraordinary

---

[3] The B.A.P. has also cited the District of Colorado's analysis of abstention under the four-factor test used in *In re Spade,* 258 B.R. 221 (Bankr. D. Colo. 2001). *Macke Int'l Trade, Inc.*, 370 B.R. at 247. *See also In re Spade*, 258 B.R. 221, 227-229 (Bankr. D. Colo. 2001) (finding the following four criteria relevant into the court's determination on abstention: "(1) the motivation of the parties seeking bankruptcy jurisdiction, (2) the availability of another forum, (3) the economy and efficiency of administration, and (4) prejudice to the parties."). The Court observes that the four foregoing factors are relevant to this Court's inquiry and are addressed herein.

[4] *See also In re Paper I Partners, L.P.*, 283 B.R. 661, 679 (Bankr. S.D.N.Y. 2002) (applying the broader seven factors in making their determination that there was no basis for abstention when most factors weighed in favor of a bankruptcy proceeding); *In re Selectron Mgmt. Corp.*, No. 10-75320-dte, 2010 Bankr. LEXIS 3361, at *11, *19 (E.D.N.Y. Sept. 27, 2010) (concluding that the court may dismiss a bankruptcy case sua sponte and applied the seven factors when making their determination that abstention was proper); *In re Korean Radio Broad. Inc.*, No. 19-46322-ess, 2020 Bankr. LEXIS 1170, at *30 (Bankr. E.D.N.Y. Mar. 31, 2020) (holding dismissal under §305(a) was proper when six of the seven factors weighed in favor of abstention); *In re P&G Realty Corp.*,157 B.R. 239, 242 (Bankr. W.D. Pa. Aug. 11, 1993) (holding abstention was warranted because the sole issue before the court was whether an issue of state law was correctly applied in previous litigation); *In re Compania de Alimentos Fargo, S.A.,* 376 B.R. 427, 434 (Bankr. S.D. N.Y. 2007) (holding abstention proper and underscoring the importance of judicial deference to pending foreign bankruptcy proceedings); *In re Short Hills Caters, Inc.*, No. 08-18604, 2008 Bankr. LEXIS 1726, at *16-17 (Bankr. D.N.J. June 4, 2008) (finding abstention proper and emphasizing the importance that both the creditors and debtors must benefit from the dismissal under §305(a) for abstention to be proper); *In re R&S St. Rose*, No. 10-18827-MKN, 2010 Bankr. LEXIS 6574, at *23 (Bankr. D. Nev. Oct. 29, 2010) (holding abstention proper where there is a two-party dispute and no benefit to liquidating the asset in Chapter 7).

1  remedy' of 'narrow breadth,' which may be utilized 'to prevent the commencement and

2  continuation of disruptive involuntary cases.'" *In re Macke*, 370 B.R. at 247.

3      A decision to abstain under § 305 is subject to limited review under an abuse of

4  discretion standard. *See Eastman*, 188 B.R. at 624; *see also In re Gabriel Techs. Corp.*,

5  No. 13-30341, 2013 WL 5550391, at *3 (Bankr. N.D. Cal. Oct. 7, 2013).[5] The reviewing

6  court must affirm the bankruptcy court's fact findings on any grounds fairly supported by

7  the record unless they are illogical, implausible, or without support in the record. See

8  *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009).[6]

9               **The Marciano Factors support Abstention Alleged**

10      This is a single asset real estate case. Counsel for the Petitioning Creditors

11  acknowledged at the hearing that Allstate Lending, the holder of the Third DOT, was

12  likely partially or fully unsecured. Moreover, there are limited unsecured creditors and a

13  corporate ownership dispute exists. Further, there is a pending related state court

14  proceeding and it is clear that this case and the prior case were filed for the purposes of

15  preventing collection activities by the holders of the First DOT and the Second DOT.[7]

16  Other factors were extensively discussed on the record.

17

18

---

19  [5] Courts in the Ninth Circuit apply a two-part test to determine whether an abuse of discretion occurred. *In

20  re Roger*, No. 6:13-BK-27611-MH, 2015 WL 7566647, at *6 (C.D. Cal. Nov. 24, 2015). In *In re Roger*,
where the District Court reversed a bankruptcy court's order denying appellant's motion to abstain, the

21  court applied a two-factor test to determine whether an abuse of discretion occurred: (1) The court
considered de-novo whether the bankruptcy court applied the correct legal standard, and (2) If the

22  bankruptcy court identified the correct legal standard, the reviewing court must determine if the
bankruptcy court's application of the law was "illogical, implausible, or without support in inferences that

23  may be drawn from the facts in the record." *In re Roger*, 2015 WL 7566647, at *6 (citing *United States v.
Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009)).

24  [6] A reviewing court will defer to the lower court's decision under the abuse of discretion standard unless

25  there was: "(1) reliance on an improper factor, (2) omission of a substantial factor, or (3) a clear error of
judgment in weighing the correct mix of factors." *See In re Wells Fargo Home Mortg. Overtime Pay Litig.*,

26  571 F.3d 953, 957 (9th Cir. 2009). A factual determination is clearly erroneous when it is without
adequate evidentiary support or was induced by an erroneous view of law. *Wall St. Plaza, LLC v. JSJF

27  Corp. (In re JSJF Corp.)*, 344 B.R. 94, 99 (9th Cir. B.A.P. 2006); *Sullivan v. Harnisch (In re Sullivan)*, 522
B.R. 604, 612 (9th Cir. B.A.P. 2014).

28  [7] At the hearing, the Court stopped short of finding that this involuntary petition was filed in bad faith, but
noted that it was a close call.

The *Marciano* factors demonstrate that the interest of all creditors, including the Petitioning Creditors and the interests of the Alleged Debtor, would be better served by dismissal. Having considered and examined the totality of the circumstances against the relevant factors, this Court is of the opinion that judicial economy and efficiency would be better served by resolution of the issues underlying the ownership dispute in state court, rather than in this bankruptcy proceeding. If appropriate, the Petitioning Creditors may also seek an injunction in that state forum as well.

There is no question that these issues are based predominantly on state law issues and can be easily decided in state court. "There is no need for the federal court to resolve a matter which is grounded in state law issues currently pending in state court." *In re Spade*, 369 B.R. at 229.

Accordingly, the Court having determined that, based on the totality of the circumstances, the Court should abstain to permit all state court activity and state law remedies and state law defenses should prescribe the final outcome of the parties' disputes, which have been long in duration.

### Conclusion

For the reasons so specified herein and discussed on the record, the Court finds that the totality of the circumstances weigh in favor of this Court exercising its discretion to ABSTAIN from the proceeding, and so finds good cause to DISMISS the case.

**IT IS SO ORDERED.**

Date: July 17, 2025

Scott C. Clarkson
United States Bankruptcy Judge

# EXHIBIT 3

| Fill in this information to identify the case: |
| --- |

United States Bankruptcy Court for the:

DISTRICT OF DELAWARE

Case number *(if known)* _____   Chapter **11**

☐ Check if this is an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy
**04/25**

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| 1. | Debtor's name | **CSPRF 2 LLC** |
| --- | --- | --- |

| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and *doing business as* names | |
| --- | --- | --- |

| 3. | Debtor's federal Employer Identification Number (EIN) | **88-3715151** |
| --- | --- | --- |

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
| --- | --- |
| **1207 Delaware Ave, Suite 2902**<br>**Wilmington, DE 19806**<br>Number, Street, City, State & ZIP Code | |
| | P.O. Box, Number, Street, City, State & ZIP Code |
| **New Castle**<br>County | **Location of principal assets, if different from principal place of business** |
| | Number, Street, City, State & ZIP Code |

**5. Debtor's website** (URL) _____

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

Debtor    **CSPRF 2 LLC** _____    Case number (*if known*) _____
    Name

**7.**    **Describe debtor's business**    A. *Check one:*

☐   Health Care Business (as defined in 11 U.S.C. § 101(27A))

☑   Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐   Railroad (as defined in 11 U.S.C. § 101(44))

☐   Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐   Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐   Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐   None of the above

B. *Check all that apply*

☐   Tax-exempt entity (as described in 26 U.S.C. §501)

☐   Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐   Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
    http://www.uscourts.gov/four-digit-national-association-naics-codes.

    ____

**8.**    **Under which chapter of the Bankruptcy Code is the debtor filing?**    *Check one:*

☐   Chapter 7

☐   Chapter 9

☑   Chapter 11. *Check **all** that apply:*

    ☐   Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

    ☐   The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐   The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

    ☐   A plan is being filed with this petition.

    ☐   Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐   The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐   The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐   Chapter 12

**9.**    **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

☑   No.
☐   Yes.

| | District | When | Case number |
|---|---|---|---|
| | District _____ | When _____ | Case number _____ |
| | District _____ | When _____ | Case number _____ |

**10.**   **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☑   No
☐   Yes.

| Debtor | **CSPRF 2 LLC** | Case number (*if known*) |
|---|---|---|
| | Name | |

List all cases. If more than 1, attach a separate list

| | Debtor | | Relationship |
|---|---|---|---|
| | District | When | Case number, if known |

---

**11. Why is the case filed in *this district?***

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

---

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes. Insurance agency _____

Contact name _____

Phone _____

---

### ▇ Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

---

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

---

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ■ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

---

| Debtor | **CSPRF 2 LLC** | Case number (*if known*) |
|---|---|---|
| | Name | |

---

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  07/18/2025
MM / DD / YYYY

X _____         David Blatt
Signature of authorized representative of debtor      Printed name

Title  **Manager**

**18. Signature of attorney**

X _____         Date  07/18/2025
Signature of attorney for debtor                        MM / DD / YYYY

**Charles J. Brown, III**
Printed name

**Gellert Seitz Busenkell & Brown, LLC**
Firm name

**1201 N. Orange Street**
**Suite 300**
**Wilmington, DE 19801**
Number, Street, City, State & ZIP Code

Contact phone  **302-425-5813**      Email address  **cbrown@gsbblaw.com**

**3368 DE**
Bar number and State

## ACTION BY WRITTEN CONSENT

## OF THE MEMBER OF CSPRF 2 LLC

### July 18, 2025

The undersigned, the managing member (the "**Member**") of CSPRF 2 LLC, a Delaware limited liability corporation (the "**Company**"), acting by written consent, does hereby consent and agree to the adoption of the resolutions set forth below taking or authorizing the actions specified therein with the same force and effect as if such resolutions were approved and adopted at a duly constituted meeting of the members of the Company.

WHEREAS, the Member has determined that the while the Company is balance sheet solvent, the Company is currently illiquid and unable to meet its obligations as they become due in the usual course of business;

WHEREAS, various creditors have threatened to prosecute their claims against the Company; and

WHEREAS, the Member has determined that it would be in the best interests of the Company for the Company to file a voluntary petition under chapter 11 Title 11 of the United States Code (the "**Bankruptcy Code**").

NOW THEREFORE, LET IT BE RESOLVED, that the Company file as soon as practicable a Chapter 11 bankruptcy petition in accordance with the Bankruptcy Code.

RESOLVED FURTHER, that David Blatt, (the "**Authorized Person**"), hereby is, authorized, empowered and directed to execute, deliver and file the voluntary petition of CSPRF 2 LLC, under chapter 11 of title 11 of the United States Code in the name of and on behalf of the Company.

RESOLVED FURTHER, that the Company shall employ, subject to any requisite bankruptcy court approval, the law firm of Gellert Seitz Busenkell and Brown, LLC as general bankruptcy counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including filing any pleadings; and in connection therewith, the Authorized Person is hereby authorized and directed to cause to be filed an appropriate application for authority to retain the services of Gellert Seitz Busenkell & Brown, LLC;

RESOLVED FURTHER, that the Company shall employ, subject to any requisite bankruptcy court approval, such other professionals and persons as the Authorized Person determines are necessary in order to conduct the Chapter 11 Case while subject to the jurisdiction of the Bankruptcy Court;

RESOLVED FURTHER, that the Authorized Person is hereby authorized, empowered and directed to execute and deliver any other instrument, certificate, document or other agreement to be delivered in connection with the Amendment in the name and on behalf of the Company, and

to take all such actions as the Authorized Person deems necessary or advisable in connection therewith, including but not limited to the sale of the real property of the Company.

RESOLVED FURTHER, that the execution by the Authorized Person of any document authorized by the foregoing resolutions, or any document executed by the Authorized Person in the accomplishment of any action or actions so authorized, is the enforceable and binding act and obligation of the Company.

This Action by Written Consent of the Sole Member may be delivered via facsimile or electronic mail with the intention that it shall have the same force and effect as the original executed counterpart thereof.

**IN WITNESS WHEREOF**, the undersigned has duly executed this Action by Written Consent of the Sole Member as of the date first above written.

**CSPRF 2 LLC,**

By:_____
DAIVD BLATT, MANAGER

**Fill in this information to identify the case:**

Debtor name    **CSPRF 2 LLC**

United States Bankruptcy Court for the:   DISTRICT OF DELAWARE

Case number (if known) _____

☐ Check if this is an
    amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐   *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
☐   *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
☐   *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
☐   *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
☐   *Schedule H: Codebtors* (Official Form 206H)
☐   *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
☐   Amended *Schedule* _____
■   *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
☐   Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    07/18/2025     X _____
                                  Signature of individual signing on behalf of debtor

                                   **David Blatt**
                                   Printed name

                                   **Manager**
                                   Position or relationship to debtor

| Fill in this information to identify the case: | |
|---|---|
| Debtor name **CSPRF 2 LLC** | |
| United States Bankruptcy Court for the: **DISTRICT OF DELAWARE** | |
| Case number (if known): | ☐ Check if this is an amended filing |

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Civic Real Estate Holdings III, LLC 2015 Manhattan Beach Blvd Suite 106 Redondo Beach, CA 90278** | | **1116 Chantilly Road,  Los Angeles, CA 90077** | **Disputed** | **$17,888,377.58** | **Unknown** | **Unknown** |
| **Kronick Moskovitz Tiedemann & Girard 1331 Garden Hwy, 2nd Floor Sacramento, CA 95833** | | | | | | $13,422.55 |

# United States Bankruptcy Court
### District of Delaware

In re    **CSPRF 2 LLC**                                    Case No. _____

                                           Debtor(s)            Chapter    **11**

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **CSP Notes LLC**<br>**1207 Delaware Ave, Suite 2902**<br>**Wilmington, DE 19806** | | **100%** | |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

      I, the **Manager** of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date       07/18/2025                  Signature                                                 

                                                                       **David Blatt**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Sheet 1 of 1 in List of Equity Security Holders

## United States Bankruptcy Court
### District of Delaware

In re    **CSPRF 2 LLC**                                                      Case No.
                                            Debtor(s)            Chapter    **11**

# VERIFICATION OF CREDITOR MATRIX

I, the Manager of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date: _____07-18-2025_____                    _____

                                                   **David Blatt**/**Manager**
                                                   Signer/Title

CSPRF 2 LLC
1207 Delaware Ave, Suite 2902
Wilmington, DE 19806

.

Charles J. Brown, III
Gellert Seitz Busenkell & Brown, LLC
1201 N. Orange Street
Suite 300
Wilmington, DE 19801

Internal Revenue Service
PO BOX 7346
Philadelphia, PA 19101-7346

State of Delaware
Department of Justice
Attn: Edward Kosmowski
820 N. French St., 8th Floor
Wilmington, DE 19801

Civic Real Estate Holdings III, LLC
2015 Manhattan Beach Blvd
Suite 106
Redondo Beach, CA 90278

Kronick Moskovitz Tiedemann & Girard
1331 Garden Hwy, 2nd Floor
Sacramento, CA 95833

# United States Bankruptcy Court
### District of Delaware

In re   **CSPRF 2 LLC**                                      Case No.

                                           Debtor(s)          Chapter     **11**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for    **CSPRF 2 LLC**    in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

**CSP Notes LLC**
**1207 Delaware Ave, Suite 2902**
**Wilmington, DE 19806**

☐ None [*Check if applicable*]

7/18/2025                                    */s/ Charles J. Brown, III*

Date                                           **Charles J. Brown, III**
                                              Signature of Attorney or Litigant
                                              Counsel for    **CSPRF 2 LLC**
                                              **Gellert Seitz Busenkell & Brown, LLC**
                                              **1201 N. Orange Street**
                                              **Suite 300**
                                              **Wilmington, DE 19801**
                                              **302-425-5813 Fax:302-425-5814**
                                              **cbrown@gsbblaw.com**

# EXHIBIT 4

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CSPRF 2 LLC | Case No.  25-11348 (CTG) |
| Debtor. | **Re: Docket No. 3** |

**ORDER GRANTING EMERGENCY MOTION OF CIVIC REAL ESTATE
HOLDINGS III, LLC FOR ENTRY OF AN ORDER DISMISSING CHAPTER 11
CASE OR, IN THE ALTERNATIVE, TRANSFERRING VENUE TO
<u>CENTRAL DISTRICT OF CALIFORNIA</u>**

Upon the motion (the "<u>Motion</u>")[1] of Civic Real Estate Holdings III, LLC (the "<u>Civic</u>")

for entry of an order on the *Emergency Motion of Civic Real Estate Holdings III, LLC for Entry*

*of an Order Dismissing Chapter 11 Case Or, in the Alternative, Transferring Venue to Central*

*District of California* (the "<u>Motion</u>"); and the United States District Court for the District of

Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred

to this Court under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference* from

the United States District Court for the District of Delaware, dated February 29, 2012; and the

Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court

having found that it may enter a final order consistent with Article III of the United States

Constitution; and the Court having found that venue of this proceeding and the Motion in this

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that due,

sufficient, and proper notice of the Motion having been provided under the circumstances and in

accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or

---

[1]    A capitalized term used but not defined herein shall have the meaning ascribed to it in the Motion.

further notice need be provided; and the Court having found cause for the relief requested in the

Motion; and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Debtor, its estate, its creditors, its stakeholders, and all other parties-in-

interest, and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

The Motion is GRANTED as set forth herein:

Venue of the Debtor's bankruptcy proceeding is hereby transferred to the United States

Bankruptcy Court for the Central District of California pursuant to 28 U.S.C. § 1412 and

Fed. R. Bankr. P. 1014.

**Dated: July 25th, 2025**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

# EXHIBIT 5

 Sales Calendar 1(844) 477-ST...

 **Trustee Sales**      **Sale 948936**

**STOX is Offering Title Searches!! Order a Title Report!!! Be sure of your investment!!**
**Reports are affordable and empower you with the information you need to be completely sure you are bidding on the right property to place yourself the right posititon.**
**There is nothing worse than finding out a problem after you have already purchased the property.**
**Be an empowered bidder, bid with comfidence!!! Order your report today, prices starting at $50\* \*prices based on state and scope of research requested.**

**Send email to title@thestoxgroup.com, include the TS# or STOX# of the property you are interested in the subject line.**

| | | | |
|---|---|---|---|
| **STOX#** | 948936 | **TS#** | 2024-100709 |
| **Trustee** | Beacon Default Management, Inc., a California corporation | **Executed By** | CHANTILLY ROAD, LLC, a California limited liability company |
| **Property Address** | [1116 Chantilly Road, Los Angeles , California 90077 Los Angeles](#) . | | |
| **Tax ID** | 4369-037-001 | | |
| **State** | CA | **County** | Los Angeles |
| **Opening Bid** | $3,376,938.77 | | |
| **Sale Location** | Behind the fountain located in Civic Center Plaza located at 400 Civic Center Plaza, Pomona, CA 91766 | | |
| **Date of Sale** | 07-29-2025 | **Time of Sale** | 10:30 am |
| **Trustee Sale Notes** | | | |
| **Sale Postponed to:** | | | |
| **Sales Results** | Back to Beneficiary | | |
| **Highest Bid** | $3,376,938.77 | | |
| **California Redemption Trustee Contact Information:** | Beacon Default Management, Inc. 30101 Agoura Court Suite 203 Agoura Hills, CA 91301 310-929-5457 | | |
| **Disclaimer** | Foreclosure sale auctions conducted on or after January 1, 2021 with respect to properties containing from one to four residential units, the post-auction bid process described in Civil Code section 2924m may apply. Pursuant to the Civil Code, if you think you may qualify as an eligible tenant buyer or eligible bidder, you should consider contacting an attorney or appropriate real estate professional | | |

should be aware that there is the potential for the sale auction bidding process to be extended for up to 45 days following the sale auction, and Civil Code section 2924m does not require payment of interest on any bid funds remitted to the foreclosure trustee during the time funds are held by the foreclosure trustee.

# EXHIBIT 6

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Richard M. Pachulski 62337<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard, Suite 1300<br>Los Angeles, CA 90067<br>Tel: (310) 277-6910:<br>Email: rpachulski@pszjlaw.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant, Civic Real Estate Holdings III, LLC* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| In re:<br>CHANTILLY ROAD, LLC, | CASE NO.: 8:25-bk-11409<br>CHAPTER: 7 |
|---|---|
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** |
| Debtor(s). | DATE:     [Application for Order Shortening Time Filed]<br>TIME:<br>COURTROOM: |

| **Movant:**<br>Civic Real Estate Holdings III, LLC |
|---|

1. **Hearing Location**:

   ☐ 255 East Temple Street, Los Angeles, CA 90012         ☒ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367   ☐ 1415 State Street, Santa Barbara, CA 93101
   ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys *(if any),* and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at  www.cacb.uscourts.gov/forms  for use in preparing your response (optional LBR form F 4001-1 .RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 1                                    **F 4001-1.RFS.RP.MOTION**
4929-4572-4243.1 07993.00002

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☐  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1 (d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☒  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (date) _____ and (time) _____; and, you may appear at the hearing.

   a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b   ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☒  An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  July 8, 2025 _____

PACHULSKI STANG ZIEHL & JONES LLP _____
Printed name of law firm (if applicable)

Richard M. Pachulski _____
Printed name of individual Movant or attorney for Movant

 /s/ Richard M. Pachulski _____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☒ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other *(specify):*

2. *The Property at Issue (Property):*

   a. Address:

   *Street address:* 1116 Chantilly Road
   *Unit/suite number*:
   *City, state, zip code*: Los Angeles, CA  90077

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit <u>A</u>):

3. **Bankruptcy Case History:**

   a. A ☐ voluntary ☒ involuntary bankruptcy petition under chapter    ☒ 7  ☐ 11  ☐ 12  ☐ 13
   was filed on *(date)* 5/25/2025____.

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on *(date)* _____.

   c. ☐ A plan, if any, was confirmed on *(date)* _____.

4. **Grounds for Relief from Stay**:

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☒ Movant's interest in the Property is not adequately protected.

   (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

   (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

   (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

   (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

   (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

   (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

   (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition. Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

   (F) ☐ Other *(see attached continuation page).*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                    Page 3                          **F 4001-1.RFS.RP.MOTION**
4929-4572-4243.1 07993.00002

(3) ☐ *(Chapter 12 or 13 cases only)*

    (A) ☐ All payments on account of the Property are being made through the plan.
          ☐ Preconfirmation ☐ Postconfirmation plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☐ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on *(date)* _____,
    which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ___.

c. ☐ Other *(specify):*

6. **Evidence in Support of Motion:** *(Declaration(s) MUST be signed under penalty of perjury and attached to this motion)*

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit ___.

d. ☒ Other:

(1) In the Debtor's dismissed Chapter 11 case, number 8:24-bk-13197-TA, a broker was employed and the listing price was reduced from $22,495,000 as of 3/8/25 to $21 million as of 4/29/25, and the listing was removed on 5/2025.

(2) The Declaration of Mauricio Umansky in Support of Motion for Relief From Automatic Stay Under 11 U.S.C. §362, filed by creditor CSPRF 2 LLC on June 20, 2025 [Dkt. No. 7], attached thereto as Exhibit C at p. 84.

*June 2017*
4929-4572-4243.1 07993.00002
           Page 5

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 4001-1.RFS.RP.MOTION**

7.  ☒  **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*
4929-4572-4243.1 07993.00002

Page 5

**F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)   ☒ 11 U.S.C. § 362(d)(2)   ☐ 11 U.S.C. § 362(d)(3).

2.  ☒  Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☐  Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement. Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.

4.  ☐  Confirmation that there is no stay in effect.

5.  ☐  The stay is annulled retroactive to the bankruptcy petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

6.  ☐  The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

7.  ☒  The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

8.  ☐  A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:

    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

9.  ☐  Relief from the stay is granted under 11 U.S.C. § 362(d)(4): If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

10. ☐  The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒  The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

    ☒ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

12. ☐  Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

13. ☐  If relief from stay is not granted, adequate protection shall be ordered.

14. ☐  See attached continuation page for other relief requested.

Date:  July 8, 2025

PACHULSKI STANG ZIEHL & JONES LLP
_____
Printed name of law firm *(if applicable)*
Richard M. Pachulski
_____
Printed name of individual Movant or attorney for Movant

_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, *(print name of Declarant)* _____**Kimberly N. Wright**_____, declare:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because *(specify)*:

    a.  ☐  I am the Movant.

    b.  ☒  I am employed by Movant as *(state title and capacity):*   Assistant Vice President

    c.  ☐  Other *(specify)*:

2.  a.  ☒  I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐  Other *(see attached)*:

3.  The Movant is:

    a.  ☒  Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit A.

    b.  ☒  Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g. ,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit B.

    c.  ☐  Servicing agent authorized to act on behalf of the:
        ☐  Holder.
        ☐  Beneficiary.

    d.  ☐  Other *(specify)*:

4.  a.  The address of the Property is:

        *Street address:* 1116 Chantilly Road
        *Unit/suite no.:*
        *City, state, zip code:* Los Angeles, CA  90077

    b.  The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:
        The document recording number for the Deed of Trust is 20220123166, recorded 2/1/22 in Los Angeles County.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*                                          Page 6                                    **F 4001-1.RFS.RP.MOTION**
4929-4572-4243.1 07993.00002

5.  Type of property *(check all applicable boxes)*:

   a. ☐ Debtor's principal residence        b. ☒ Other residence
   c. ☐ Multi-unit residential              d. ☐ Commercial
   e. ☐ Industrial                          f. ☐ Vacant land
   g. ☐ Other *(specify)*:

6.  Nature of the Debtor's interest in the Property:

   a. ☒ Sole owner
   b. ☐ Co-owner(s) *(specify)*:
   c. ☐ Lienholder *(specify)*:
   d. ☐ Other *(specify)*:
   e. ☐ The Debtor ☐ did ☐ did not list the Property in the Debtor's schedules.
   f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.
       The deed was recorded on *(date)* _____.

7.  Movant holds a  ☒ deed of trust  ☐ judgment lien  ☐ other *(specify)* _____
    that encumbers the Property.

   a. ☒ A true and correct copy of the document as recorded is attached as Exhibit <u>A</u>.
   b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
       attached as Exhibit <u>B</u>.
   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
       trust to Movant is attached as Exhibit ___.

8.  Amount of Movant's claim with respect to the Property:

|   | | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 15,104,755.00 |
| b. | Accrued interest: | $ | $ | $ 2,620,888.17 |
| c. | Late charges | $ | $ | $ 105.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 93,208.00 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 69,421.41 |
| f. | Less suspense account or partial balance paid: | $[                ] | $[              ] | $[                ] |
| g. | TOTAL CLAIM as of *(date)*: | $ | $ | $ 17,888,377.58 |

   h. ☒ Loan is all due and payable because it matured on *(date)*  <u>8/1/24</u>

9.  Status of Movant's foreclosure actions relating to the Property *(fill the date or check the box confirming no such action
    has occurred)*:

   a. Notice of default recorded on *(date)* <u>9/30/2024</u>  or ☐ none recorded.
   b. Notice of sale recorded on *(date)* <u>5/22/2025</u>  or ☐ none recorded.
   c. Foreclosure sale originally scheduled for *(date)* <u>6/24/2025</u>  or ☐ none scheduled.
   d. Foreclosure sale currently scheduled for *(date)* <u>7/11/2025</u>  or ☐ none scheduled.
   e. Foreclosure sale already held on *(date)* _____  or ☒ none held.
   f. Trustee's deed upon sale already recorded on *(date)* _____  or ☒ none recorded.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2017                              Page 7                          F 4001-1.RFS.RP.MOTION
4929-4572-4243.1 07993.00002

10. Attached *(optional)* as Exhibit ___ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☒ *(chapter 7 and 11 cases only)* Status of Movant's loan: Matured 8/1/24

   a. Amount of current monthly payment as of the date of this declaration: $ _n/a_____ for the month of _____ 20__.

   b. Number of payments that have come due and were not made: _n/a__ . Total amount: $ _____

   c. Future payments due by time of anticipated hearing date *(if applicable)*:

     An additional payment of $ ___n/a___ will come due on *(date)* _____ , and on the ___ day of each month thereafter. If the payment is not received within ___ days of said due date, a late charge of $ _____ will be charged to the loan.

   d. The fair market value of the Property is $ _21,000,000_____ , established by:

     (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit ___ .

     (2) ☒ A real estate broker or other expert's declaration regarding value is attached as Exhibit C to Motion for Relief From Automatic Stay Under 11 U.S.C. §362, filed by creditor CSPRF 2 LLC on June 20, 2025 [Dkt. No. 7].

     (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit ___ .

     (4) ☒ Other *(specify):* The reduction of the listing price from $22,495,000 to $21,000,000 prior to dismissal of the chapter 11 case.

   e. **Calculation of equity/equity cushion in Property:**

     Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor *(if any)* | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | Civic Real Estate Holdings III, LLC | $ | $ 17,888,377.58 |
| 2nd deed of trust: | CSPRF 2, LLC | $ | $ 3,376,938.77 |
| 3rd deed of trust: | Allstate Lending Group, Inc. | $ | $ 2,500,000.00 |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | 23,765,316.35 | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached, and consists of:

     (1) ☐ Preliminary title report.

     (2) ☐ Relevant portions of the Debtor's schedules

     (3) ☒ Other *(specify):* (1) Exhibits A & B hereto (Movant's Note and Deed of Trust); and (2) Exhibit C hereto, consisting of relevant portions of the Motion for Relief From Automatic Stay Under 11 U.S.C. §362, filed by creditor CSPRF 2 LLC on June 20, 2025 [Dkt. No. 7], specifically Exhibits A & B thereto (CSPRF 2) and Exhibit D thereto (Allstate).

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
     I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $ _696,722_____ and is ___3.32% of the fair market value

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*
4929-4572-4243.1 07993.00002

Page 10

**F 4001-1.RFS.RP.MOTION**

of the Property (taking into account estimated costs of sale).

h.  ☒ **11 U.S.C. § 362(d)(2)(A) - Equity:**
By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $ -(2,765,316.35)_____.

i.  ☒ Estimated costs of sale: $ 2,415,000.00_____ (estimate based upon 11.5 % of estimated gross sales price) (standard costs of 6% plus the 5.5% transfer tax imposed by Los Angeles Measure ULA (the "mansion tax")).

j.  ☐ The fair market value of the Property is declining because:

12. ☐ *(Chapter 12 and 13 cases only)* Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for *(or concluded on)* the following date: _____.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: _____.
A plan was confirmed on the following date *(if applicable)*: _____.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit ___.)

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                          $
*(For details of type and amount, see Exhibit ___)*

e.  Attorneys' fees and costs:                                                       $
*(For details of type and amount, see Exhibit ___)*

f.  Less suspense account or partial paid balance:                          $[                    ]

TOTAL POSTPETITION DELINQUENCY:                          $

g.  Future payments due by time of anticipated hearing date *(if applicable)*: _____.
An additional payment of $ _____ will come due on _____, and on the ___ day of each month thereafter. If the payment is not received by the ___ day of the month, a late charge of $ _____ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*
4929-4572-4243.1 07993.00002                          Page 10                          **F 4001-1.RFS.RP.MOTION**

$ _____   received on *(date)* _____
$ _____   received on *(date)* _____
$ _____   received on *(date)* _____

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
A plan payment history is attached as Exhibit ___. See attached declaration(s) of chapter 12 trustee or
13 trustee regarding receipt of payments under the plan *(attach LBR form F 4001-1.DEC.AGENT. TRUSTEE)*.

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to
insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on *(date)* _____ that the Property qualifies as "single asset real estate" as defined in
11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30
days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor
has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable
time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is
attached as Exhibit ___.

16. ☐ Movant regained possession of the Property on *(date)* _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs
(or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other *(specify)*:

18. ☒ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or
court approval. See attached continuation page for facts establishing the scheme.

b. ☒ Multiple bankruptcy cases affecting the Property include:

1. Case name: Chantilly Road, LLC _____
   Chapter: 11 ___   Case number: 8:24-bk-13197-SC ____
   Date dismissed: 5/19/2025 ____   Date discharged: _____   Date filed: 12/15/2024 ____
   Relief from stay regarding the Property ☐ was   ☐ was not granted.

2. Case name: _____
   Chapter: _____   Case number: _____
   Date dismissed: _____   Date discharged: _____   Date filed: _____
   Relief from stay regarding the Property ☐ was   ☐ was not granted.

3. Case name: _____
   Chapter: _____   Case number: _____
   Date dismissed: _____   Date discharged: _____   Date filed: _____
   Relief from stay regarding the Property ☐ was   ☐ was not granted.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2017*
4929-4572-4243.1 07993.00002

Page 10

**F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit ___.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _July 8, 2025_ ~~June 26, 2025~~ | Kimberly N. Wright | |
| Date | Printed name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

_June 2017_
4929-4572-4243.1 07993.00002

Page 11

F 4001-1.RFS.RP.MOTION

1  Richard M. Pachulski (CA Bar No. 90073)
   rpachulski@pszjlaw.com
2  Harry D. Hochman (CA Bar No. 132515)
   hhochman@pszjlaw.com
3  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
4  Los Angeles, California 90067-4003
   Telephone: 310-277-6910
5  Facsimile:  310-201-0760

6  Attorneys for Civic Real Estate Holdings III,
   LLC

7

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11                  SANTA ANA DIVISION

12  In re                              Case No. 8:25-BK-11409

13  CHANTILLY ROAD, LLC,                Chapter 7

14         Debtor.                      **MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN SUPPORT OF
15                                      MOTION FOR RELIEF FROM THE
                                        AUTOMATIC STAY**

16                                      Date:    [Application for Order Shortening
17                                      Time     Filed Herewith]
                                        Judge:   Hon. Scott C. Clarkson
18

19

20         Creditor Civic Real Estate Holdings III, LLC ("Civic") respectfully submits the following

21  Memorandum of Points and Authorities to supplement its Motion for Relief From the Automatic

22  Stay (the "Motion"), solely to draw the Court's attention to the following essential facts:

23         1.      Civic is by far the largest creditor in this case, with a secured claim of $17,701,121

24  as of June 13, 2025.  The loan matured on August 24, 2024, and Civic recorded its Notice of

25  Default on September 30, 2024.

26         2.      Civic has been stymied from proceeding to foreclosure, first by a voluntary chapter

27  11 petition filed on December 15, 2024 by Chantilly Road, LLC (the "Debtor") and then, after that

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  petition was dismissed by this Court on May 19, 2025, by the filing of an involuntary chapter 7

2  petition by junior creditors on May 25, 2025.

3       3.    Civic's collateral is the Debtor's sole material asset, the property located at 116

4  Chantilly Road in Los Angeles (the "Property").  During the voluntary case, the Debtor listed the

5  Property for sale, first on March 8, 2025 at $23,995,000, which listing was reduced to $21 million

6  as of April 29, 2025, where it remained until removed on May 20, 2025.

7       4.    On June 20, 2025, second lienholder, CSPRF 2 LLC filed its *Motion for Relief

8  From Automatic Stay Under 11 U.S.C. §362* [Dkt. No. 7], which posits that the value of the

9  Property is $21 million (even though it did not sell at that listing price), supported by a broker

10  declaration of Mauricio Umansky (Ex. C thereto).

11      5.    Notably, overlooked in the CSPRF 2 motion is that the Los Angeles "mansion tax"

12  of 5.5% would apply.  The mansion tax is supplemental to the ordinary transfer tax, and thus, per

13  the Los Angeles Office of Finance online calculator (https://finance.lacity.gov/faq/measure-ula),

14  the transfer tax on a $21 million sale is $1,249,500.  Thus while CSPRF 2 assumes 6% costs of

15  sale in its motion, those costs would actually be 11.5%, or $2,415,000, leaving $18,585,000 to

16  satisfy a Civic secured claim of $17.7 million that increases by $7,552.50 per day (*i.e.*, by

17  $113,280 since June 13 alone).  An already skinny 3.9% equity cushion will dissipate entirely

18  within a few months, taking into account only interest accruals.

19      6.    In all likelihood, $21 million is over-optimistic, meaning that any equity cushion

20  Civic may have had in the Property may *already* be gone.  It would certainly be gone by the time

21  Civic is able conduct a foreclosure sale.  Given the lack of adequate protection, and the absence of

22  any equity in the Property to support a reorganization, Civic respectfully submits that relief from

23  stay should be granted immediately.

24

25

26

27

28

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1    Dated:  July 8, 2025                    PACHULSKI STANG ZIEHL & JONES LLP

2

3                                           By    */s/ Richard M. Pachulski*

4                                                  Richard M. Pachulski
                                                   Harry D. Hochman
5                                                  Attorneys for Civic Real Estate Holdings III, LLC

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# PROMISSORY NOTE

Loan Number: 0121121673

Property Address:

1116 Chantilly Rd.
Los Angeles, CA 90077

**Date of this Promissory Note: January 27, 2022**

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that the undersigned **Chantilly Road, LLC, a California Limited Liability Company** (individually and collectively, the "**Borrower**") has received, the Borrower promises to pay U.S. **$15,105,000.00**, or so much thereof as may be disbursed from time to time (this amount is called "**Principal**"), plus interest on all amounts disbursed from the date of each disbursement until paid, to the order of **Civic Financial Services, LLC, a California Limited Liability Company** (the "**Lender**") on the following agreements, terms and conditions, and in accordance with the terms set forth in the Disbursement Agreement (as defined below). The Borrower will make all payments under this Promissory Note (as amended, restated, supplemented or otherwise modified from time to time, this "**Note**") in the form of check or automated clearing house transfer pursuant to Section 3.4(d) of this Note or such other method as the Lender may designate in writing.

**2.    DEFINED TERMS**

The following capitalized terms shall have the following meanings:

"**Affiliate**" means, with respect to a specified Person, another Person that directly, or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"**Approved Budget**" means the budget setting forth all of the direct and indirect costs to be incurred in connection with the Renovations of the Property, as approved by Lender and as described on <u>Schedule B</u> hereto.

"**Bankruptcy Event**" means any of the following events: (a) any Loan Party institutes or

consents to the institution of any proceeding under any Debtor Relief Law or makes an assignment for the benefit of creditors; (b) any Loan Party applies for or consents to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer for it or for all or any material part of its property; (c) any receiver, trustee, custodian, conservator, liquidator, rehabilitator or similar officer is appointed without the application or consent of any Loan Party and the appointment continues undischarged or unstayed for 30 calendar days; (d) any proceeding under any Debtor Relief Law relating to any Loan Party or to all or any material part of its property is instituted without the consent of any Loan Party and continues undismissed or unstayed for 30 calendar days, or an order for relief is entered in any such proceeding; (e) any Loan Party becomes unable or admits in writing its inability or fails generally to pay its debts as they become due; or (f) any writ or warrant of attachment or execution or similar process is issued or levied against all or any material part of the property of any Loan Party and is not released, vacated or fully bonded within 30 days after its issue or levy.

"**Borrower Rehab Contribution Amount**" means with respect to the Property, the additional proceeds to be contributed by Borrower that together with the allocated Construction and Renovations Amount for such Property shall be sufficient to fully and timely complete the Renovations in accordance with the Approved Budget. In the event that Borrower incurs any additional cost or expenses to complete the Renovations, Borrower shall be responsible for the entirety of the increased cost(s) incurred in order to complete the Renovations and shall use its own funds to complete the Renovations. The minimum Borrower Rehab Contribution Amount for the Property is set forth on Schedule A.

"**Business Day**" means any day other than a (a) Saturday, (b) Sunday, (c) day on which Lender is not open for business, or (d) day on which the Federal Reserve Bank of New York is not open for business.

"**Control**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise. "Controlling" and "Controlled" have meanings correlative thereto. Without limiting the generality of the foregoing, a Person shall be deemed to be Controlled by another Person if such other Person possesses, directly or indirectly, power to vote twenty percent (20%) or more of the securities having ordinary voting power for the election of directors, managing general partners or the equivalent.

"**Construction and Renovations Amount**" means with respect to the Property, the Loan funds available for construction and renovation purposes (as set forth on Schedule A), said amounts to be disbursed pursuant to the provisions of the Disbursement Agreement and shall not exceed the Undisbursed Loan Proceeds.

"**Debtor Relief Laws**" means the Bankruptcy Code of the United States, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar debtor relief Laws of the United States or other applicable jurisdictions from time to time in effect.

"**Default**" means the occurrence of any event that, but for the giving of notice or the passage of time, or both, would be an Event of Default.

"**Default Rate**" means a rate per annum equal to the lesser of (i) the maximum rate permitted by applicable law or (ii) eighteen percent (18%) per annum.

"**Deposit Bank**" shall mean shall mean a depository institution insured by the Federal Deposit Insurance Corporation and selected by Lender in its sole discretion.

"**Disbursement Agreement**" means that certain Disbursement Agreement executed by Borrower as of the date hereof, as the same may from time to time be amended, restated, replaced, substituted, supplemented or otherwise modified in accordance herewith.

"**Event of Default**" shall have the meaning set forth in <u>Section 7.1</u>.

"**First Payment Due Date**": **03/01/2022**.

"**Future Disbursement**" shall have the meaning set forth in <u>Section 3.2</u>.

"**Governmental Authority**" means the government of the United States or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government (including any supra-national bodies such as the European Union or the European Central Bank).

"**Guarantor**" means, individually and collectively, any guarantor of the Obligations of Borrower under this Note.

"**Indebtedness**" means the Outstanding Principal Balance of the Loan, together with all interest accrued and unpaid thereon and all other Obligations and liabilities of Borrower in respect of the Loan under this Note or any other Loan Document.

"**Initial Disbursement**" means the first disbursement of Loan proceeds to be made hereunder.

"**Initial Disbursement Date**" means the date of the initial disbursement of Loan proceeds hereunder.

"**Interest Rate**" means **8.750**% per annum.

"**Interest Reserve Amount**" means an amount equal to **Six Hundred Eighteen Thousand Four Hundred Fifty Dollars and Zero Cents ($618,450.00)**.

"**Interest Reserve Period**" means the period beginning on the Initial Disbursement Date until and including the Payment Due Date on **08/01/2022**.

"**Laws**" means, collectively, all international, foreign, Federal, state and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority, in each case whether or not having the force of law.

"**Loan**" shall mean the loan in the original principal amount of **Fifteen Million One Hundred Five Thousand Dollars and Zero Cents ($15,105,000.00)**, or so much thereof as may have been advanced hereunder by Lender to Borrower pursuant to this Note and the Disbursement Agreement.

"**Loan Documents**" means this Note, the Security Instrument, Disbursement Agreement, any guaranty of the Borrower's Obligations under this Note, and all other present and future agreements, documents and instruments executed or to be executed in connection with this Note or any of the foregoing documents, and all extensions, renewals, substitutions, replacements and modifications of any of this Note or any of the foregoing documents.

"**Loan Party**" means the Borrower and the Guarantor, if any.

"**Maturity Date**" shall mean the earlier of (i) **February 01, 2024** and (ii) the date on which the Outstanding Principal Balance of this Note and all Obligations hereunder become due and payable by acceleration or otherwise pursuant to the Loan Documents or the exercise by Lender of any right or remedy under any Loan Document.

"**Obligations**" means, collectively, each and all of the obligations of the Loan Parties under the Loan Documents, including, but not limited to, Borrower's obligations for payment of the Indebtedness, all transaction costs, Prepayment Premium, late fees and other amounts due or to become due to Lender pursuant to the Loan Documents, and payment of all operating expenses necessary for the operation of the Property and capital expenditures necessary to maintain the Property in accordance with the Loan Documents.

"**Outstanding Principal Balance**" shall mean, as of any date, the outstanding principal balance of the Loan.

"**Payment Due Date**" means the First Payment Due Date and any subsequent date on which a Monthly Payment is due and payable pursuant to Section 3 of this Note.

"**Person**" means any natural person, corporation, limited liability company, trust, joint

venture, association, company, partnership, Governmental Authority or other entity.

"**Permitted Transfer**" means, provided that no Default or Event of Default shall then exist, a Transfer (of the interest itself, but not any pledge or grant or creation of any lien) of indirect equity interests in Borrower which in the aggregate (i) do not exceed forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower, (ii) do not result in any Person's interest in Borrower exceeding forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower (other than a Person that owned forty-nine percent (49%) of the total indirect legal or beneficial ownership interests in Borrower on the date hereof) and (iii) do not result in a change in Control of Borrower. Borrower shall pay all costs and expenses of Lender in connection with a Transfer.

"**Plans**" mean the plans and specifications for the Renovations which have been submitted to and initialed by Lender, together with such changes and additions as may be approved by Lender in writing.

"**Prepayment Premium**" shall mean, in connection with each Prepayment, an amount of interest equal to **6** months' interest on the Outstanding Principal Balance at the Interest Rate less the total of all interest payments received by Lender through and including the prepayment date.

"**Policies**" All insurance required pursuant to Section 3.5 of the Security Instrument.

"**Property**" means the real property described on <u>Schedule A</u> hereto, together with all buildings and other improvements thereon and all personal property owned by Borrower and encumbered by the Security Instrument(s), together with all rights pertaining to such property.

"**Renovations**" means the repairs, renovations and improvements to be made to the Property as shown on the Plans.

"**Reserves**" means, collectively, the Tax Reserve and the Insurance Reserve, each of which shall, individually, be a "Reserve".

"**Security Instrument**" means that certain mortgage, deed of trust or deed to secure debt, as the case may be, assignment of leases and rents, security agreement and fixture filing encumbering the Property, executed by Borrower as of the date hereof, as the same may from time to time be amended, restated, replaced, substituted, supplemented or otherwise modified in accordance herewith.

"**Servicer**" means the entity or entities appointed by Lender from time to time to serve as servicer and/or special servicer of the Loan. If at any time no entity is so appointed, the term "Servicer" shall be deemed to refer to Lender.

"**Stub Interest**" shall mean, with respect to the Initial Disbursement and any Future Disbursement, the amount of interest accruing on the amount of such disbursement from the

date of such disbursement through and including the last day of the applicable calendar month, at a rate equal to the Interest Rate, as calculated in accordance with Section 3.3(b).

"**Taxes**" means all real estate and personal property taxes, assessments, fees, taxes on rents or rentals, water rates or sewer rents, facilities and other governmental, municipal and utility district charges or other similar taxes or assessments now or hereafter levied or assessed or imposed against the Property or Borrower with respect to the Property or rents therefrom or that may become liens upon any of the Property, without deduction for any amounts reimbursable to Borrower by third parties and including any interest, additions to tax or penalties applicable thereto.

"**Transfer**" means any transfer of any kind (including any gift, conveyance, lease, sublease, sale, or lien) with respect to all or any part of or any interest (whether direct or indirect, ownership, beneficial or otherwise, and irrespective of the number of tiers of parties having interests) in the Property or Borrower, or any direct or indirect constituent of Borrower, whether voluntarily or involuntarily and whether directly or indirectly, by operation of law or otherwise. Without limitation.

"**Title Company**" shall mean a national office of a major title insurance company or any successor title company acceptable to Lender and licensed to issue title insurance in the State where the Property is situated.

"**Title Insurance Policy**" shall mean an American Land Title Association mortgagee title insurance policy in form acceptable to Lender issued by the Title Company with respect to the Property and insuring the lien of the Security Instrument.

"**Undisbursed Loan Proceeds**" means, a portion of the Loan proceeds equal to **$974,000.00**, not disbursed to the Borrower on the date hereof, less any amounts to be disbursed to the Borrower pursuant to the Disbursement Agreement.

3.    **GENERAL LOAN TERMS**

3.1    Agreement to Lend and Borrow. Subject to and upon the terms and conditions set forth herein, Lender is lending to Borrower and Borrower is borrowing from Lender the Loan.

3.2    Disbursements. Borrower acknowledges receipt of the Initial Disbursement on the date hereof. Lender shall, from time to time, make additional disbursements of the Undisbursed Loan Proceeds (each, a "Future Disbursement") in accordance with the terms of this Note and the Disbursement Agreement.

3.3    Interest

(a)    Interest Rate. Subject to the further provisions of this Note and the Loan Documents, including, without limitation, Section 3.3(c) hereof, interest on the Outstanding

Principal Balance and all Obligations under the Loan Documents shall accrue from and including the Initial Disbursement Date to the Maturity Date, at the applicable Interest Rate. Interest will be charged and accrue from the date of the Initial Disbursement and each Future Disbursement by Lender (whether into escrow or otherwise) until the Indebtedness is paid in full.

(b)  Interest Calculation. Interest shall be computed on the basis of a 30-day month and 360-day year and actual days elapsed (which results in more interest being paid than if computed on the basis of a 365 or 366 day year); provided however, for the full or partial calendar month at the beginning of the term of this Note and the month in which the Indebtedness and all other Obligations of the Borrower under this Note are paid in full, interest shall be computed on the basis of a year of 365 or 366 days, as the case may be, and actual days elapsed.

(c)  Default Rate. After the occurrence and during the continuance of an Event of Default, the Outstanding Principal Balance and all other portions of the Indebtedness, shall accrue interest at the Default Rate. Interest at the Default Rate shall be paid immediately upon demand, which demand may be made as frequently as Lender shall determine.

3.4  Loan Payments.

(a)  Unless disbursement of principal is made by Lender to Borrower on the first day of a calendar month, interest for the period beginning on the Initial Disbursement Date and ending on and including the last day of such calendar month shall be payable by Borrower on or before the Initial Disbursement Date. If the Initial Disbursement Date is on the first day of a calendar month, then no payment will be due from Borrower until the First Payment Due Date. The Payment Due Date for the first monthly installment payment under Section 3.4(b) will be the First Payment Due Date set forth in Section 2. Except as provided in this Section 3.4(a), accrued interest will be payable in arrears.

(b)  Beginning on the First Payment Due Date, and continuing until and including the monthly installment due on the Maturity Date, Borrower shall pay to Lender an amount equal to interest only at the Interest Rate on the Outstanding Principal Balance in consecutive monthly installments due and payable on the first day of each calendar month (each a "**Monthly Payment**"). Any regularly scheduled monthly installment of interest that is received by Lender before the date it is due shall be deemed to have been received on the due date solely for the purpose of calculating interest due. Any amount added to the Outstanding Principal Balance pursuant to the Loan Documents shall bear interest at the applicable rate or rates specified in this Note and shall be payable with such interest upon demand by Lender and absent such demand, as provided in this Note for the payment of interest or principal and interest. Notwithstanding anything to the contrary contained herein and subject to the provisions set forth in Section 6 of this Note, upon the occurrence and during the continuance of an Event of Default, Borrower shall no longer have the right to make Monthly Payments at the Interest Rate, but shall instead make payments at the Default Rate.

(c)     <u>Payment on Maturity Date</u>. Borrower shall pay to Lender on the Maturity Date the outstanding Indebtedness, all accrued and unpaid interest (including, without limitation, all unpaid and accrued interest thereon) and all other amounts and Obligations due hereunder and all amounts due under the Loan Documents. A balloon payment will be due upon full repayment of this Note even if this Note is not repaid until the Maturity Date.

(d)     <u>ACH Authorization</u>. On each date when the payment of any principal, interest or fees are due hereunder or under any Loan Document, the Borrower agrees to maintain on deposit in an ordinary checking account maintained by the Borrower with the financial institution identified by the Borrower in a separate automatic payment authorization (as such account shall be designated by the Borrower in a separate automatic payment authorization delivered to the Lender from time to time, the **"Borrower Account"**) an amount sufficient to pay such principal, interest or fees in full on such date. The Borrower hereby authorizes the Lender on each Payment Due Date to deduct automatically all principal, interest or fees when due hereunder or under any other Loan Document from the Borrower Account (and if applicable, imposition deposits held by Lender for the purposes of facilitating the paying of Taxes, insurance cost for the Property or other individual impositions by the date on which such amounts come due). The Lender agrees to provide notice to the Borrower of any automatic deduction made pursuant to this provision showing in reasonable detail the amounts of such deduction.

(e)     <u>Method and Place of Payment</u>. Except as otherwise specifically provided herein, the Borrower will make all payments required under this Note, without notice and without offset or deduction, at **2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278** or at a different place if required by the Lender, unless such Monthly Payments are drawn directly from the Borrower Account in accordance with Section 3.4(d) of this Note. In the event any check given by Borrower to Lender as a payment on this Note is dishonored, or in the event there are insufficient funds in the designated Borrower Account to cover any preauthorized monthly debit from the Borrower Account, then, without limiting any other charges or remedies, Borrower shall pay to Lender a processing fee of $15.00 (but not more than the maximum amount allowed by law) for each such event.

(f)     <u>Advanced Interest Payments</u>. Borrower hereby agrees and authorizes Lender to withhold from the Initial Disbursement, an amount of funds equal to the Interest Reserve Amount for the payment of interest on the Loan (the **"Interest Reserve"**). The Interest Reserve funds shall be applied by the Note Holder on the Borrower's behalf for purpose of paying the Monthly Payments due on the initial **6** Payment Due Dates. Thereafter, Borrower shall continue making all scheduled Monthly Payments to Note Holder via ACH from the Borrower Account or otherwise on the schedule Payment Due Date starting with the **09/01/2022** Payment Due Date, and continuing thereafter on each scheduled Payment Due Date through the Maturity Date in installments in accordance with the provisions set forth in Sections 3.4(a), 3.4(b) and 3.4(c) of this Note.

The funding of the Interest Reserve or the insufficiency of funds in the Interest Reserve shall not relieve Borrower of its obligation to make all payments required under the Loan

Documents as and when such payments are due, including, but not limited to, the Monthly Payments during the Interest Reserve Period, which Borrower has directed the Note Holder to apply on its behalf. Upon and during the continuance of an Event of Default, Note Holder may, without notice to or the consent of Borrower, apply all or any portion of the funds in the Interest Reserve toward the payment of the principal, interest, fees, penalties and any of the other Obligations under the Loan Documents, regardless of whether the Loan has been accelerated and/or such Obligations are then due and payable, and/or exercise all other rights and remedies available to Note Holder at law or in equity.

    3.5   <u>Late Charges</u>. If the Lender has not received the full amount of any Monthly Payment or other amounts payable under this Note, the Security Instrument or any other Loan Document within the fifteenth (15) calendar day after the date the Monthly Payment or other amount is due, the Borrower will pay a late charge to the Lender. The amount of the charge will be fifteen percent (15%) of such overdue installment payment or other amount due. Borrower will pay this late charge promptly but only once on each late payment. Any amounts payable under the Loan Documents that are not paid on or before the due date shall be deemed delinquent. The Borrower acknowledges that late payment to the Lender of any sums due hereunder will cause the Lender to incur costs not contemplated hereunder, the exact amount of which would be impracticable or extremely difficult to ascertain. Such costs include processing and accounting costs, the expenses incurred and time and effort associated with recovering the delinquent payment, and the loss of timely use of the payment amount. The Borrower and the Lender each agree that the late payment charge described in this Section 3.5 represents a fair and reasonable estimate of the costs the Lender will incur by reason of the late payment. The provisions of this Section 3.5 shall not be construed as extending the time for payment of any amounts due under this Note, and acceptance of a late payment charge by the Lender shall in no event constitute a waiver of the Borrower's Event of Default with respect to the overdue amount nor prevent the Lender from exercising any of its rights and remedies with respect to such Event of Default (including, without limitation, charging interest at the Default Rate set forth below).

    3.6   <u>Phased Funding</u>. Lender shall make Future Disbursements of the Undisbursed Loan Proceeds for the purposes of paying for any Renovations relating to the Property pursuant to the terms and conditions set forth in the Disbursement Agreement. Interest shall accrue on amounts advanced commencing as of the day such Future Disbursement is made. Each Future Disbursement will be added to the principal balance and shall constitute a portion of the Indebtedness of the Loan as of the day such Future Disbursement is made. Lender's obligation to make each Future Disbursement shall be subject to the satisfaction of each and every condition set forth in the Disbursement Agreement on the date of each request for such Future Disbursement. No Future Disbursement made prior to or without the fulfillment by Borrower of all of the conditions precedent thereto, whether or not known to Lender, shall not constitute a waiver by Lender of the requirement that all conditions, including the non-performed conditions, shall be required with respect to all Future Disbursements.

    3.7   <u>Future Disbursements Generally</u>.

(a)    Lender may, in its sole and absolute discretion, cause Future Disbursements to be made on account of Borrower and deposited into the respective Reserve for which the related Future Disbursement has been established, up to, but not exceeding, the unfunded amount of the Undisbursed Loan Proceeds on the date of each Future Disbursement. Borrower shall have no consent or prior notice rights in respect of any Future Disbursement made by Lender in accordance with this <u>Section 3.7</u>, and hereby irrevocably authorizes Lender to (i) make such Future Disbursements, (ii) deduct the amounts specified in <u>Section 3.7(b)</u> below from such Future Disbursements, and (iii) incur the costs, and obtain the endorsements to the Title Insurance Policy.

(b)    In connection with each Future Disbursement, Borrower hereby instructs Lender to net fund each Future Disbursement to the related Reserve for which a Future Disbursement has been made, after deducting therefrom (i) Lender's reasonable costs and expenses (including counsel fees) in making such Future Disbursement, (ii) Stub Interest, and (iii) the costs and expenses of obtaining the required endorsement to the Title Insurance Policy. The aggregate amount of all Future Disbursements of the Construction and Renovations Amount shall under no circumstance exceed the Undisbursed Loan Proceeds.

(c)    If the Future Disbursement Date is not a Payment Due Date, (i) Borrower shall pay to Lender on such Future Disbursement Date an amount equal to interest only on the disbursement from the Future Disbursement Date up to and excluding the next Payment Due Date, in an amount equal to the Stub Interest and (ii) on each Payment Due Date thereafter, Borrower shall make payments to Lender with respect to such Future Disbursement in accordance with Section 3.4 hereof.

## 4.    BORROWER'S RIGHT TO PREPAY

### 4.1    <u>Voluntary Prepayments</u>.

(a)    The Borrower may, upon prior written notice to the Lender, at any time or from time to time, voluntarily prepay the Loan, in whole or in part (each such prepayment of Principal is referred to herein as a "**Prepayment**"); provided that (A) such notice must be in a form acceptable to the Lender and be received by the Lender not later than 11:00 a.m. Pacific Time three (3) Business Days prior to the date of such Prepayment; (B) such notice shall specify the date and amount of such Prepayment; (C) any such Prepayment shall be in a minimum principal amount of $10,000 or, if less, the entire Outstanding Principal Balance; (D) each such Prepayment shall be accompanied by a payment by the Borrower of all accrued interest on the amount prepaid and the Prepayment Premium due with respect to such Prepayment. If such notice is given by the Borrower, the Borrower shall make such Prepayment and the payment amount specified in such notice shall be due and payable on the date specified therein. The Borrower may not designate a payment as a Prepayment if the Borrower has not made all the Monthly Payments due under the Note.

(b)    The Lender may apply any Prepayment made by the Borrower hereunder to the

accrued and unpaid interest on the Prepayment amount and the Prepayment Premium, before applying any such Prepayment to reduce the Indebtedness outstanding. If the Borrower makes a partial Prepayment of the Loan, there will be no changes in the due dates of the Monthly Payments. Any such partial Prepayment may reduce the amount of the Borrower's Monthly Payments on the Payment Due Date immediately following such partial Prepayment, at which time the Lender shall recalculate the Monthly Payments due under this Note. Lender will notify Borrower in writing of its determination of the adjusted Monthly Payment, which notice shall be conclusive and binding absent manifest error.

(c)    [Reserved]

(d)    The Borrower waives any right, under California Civil Code Section 2954.10 or otherwise, to prepay any portion of the Outstanding Principal Balance under this Note without paying the Prepayment Premium described in this Note. The Borrower acknowledges that Prepayment of the principal balance of this Note in whole or in part may result in the Lender incurring additional losses, costs, expenses and liabilities, including lost revenue and lost profits. The Borrower therefore agrees to pay the Prepayment Premium on the terms set forth in this Note if any principal amount is prepaid, whether voluntarily or by reason of acceleration, including acceleration upon any sale or other Transfer of any interest in the Property securing this Note in violation of the provisions of this Note or the related Security Instrument. The Borrower further agrees that the Lender's willingness to offer the Interest Rate described above to the Borrower is sufficient and independent consideration, given individual weight by the Lender, for this waiver. The Borrower understands that the Lender would not offer such an interest rate to the Borrower absent this waiver.

## 5.    LOAN CHARGES

If a law, which applies to this Loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) the interest or any such loan charge shall be reduced by the amount necessary to reduce the interest or charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to the Borrower. The Lender may choose to make this refund by reducing the principal that the Borrower owes under this Note or by making a direct payment to the Borrower. If a refund reduces Outstanding Principal Balance, the reduction will be treated as a partial Prepayment.

## 6.    DEFAULT RATE

Upon the occurrence and during the continuance of an Event of Default, the Interest Rate applicable to the Outstanding Principal Balance and all other Obligations of the Borrower under this Note and the Loan Documents will automatically increase to the Default Rate, and shall be payable upon demand from time to time. Notwithstanding anything to the contrary contained in this Note and the other Loan Documents, with respect to monetary defaults, the Default Rate shall be assessed as follows: If any amount due in respect of the Loan (other than amounts due

on the Maturity Date or earlier acceleration) remains past due for thirty (30) days or more, interest on such unpaid amount(s) shall accrue from the date payment is due at the Default Rate and shall be payable on demand by Lender. Should an Event of Default occur with respect to two (2) or more consecutive Monthly Payments and the Borrower remains past due for more than sixty (60) days (i.e., two or more consecutive Monthly Payments are not paid when due), the Loan shall bear interest at the applicable Default Rate for the remainder of the term until the Indebtedness and all other Obligations of the Borrower under this Note and the other Loan Documents are paid in full. From and after the Maturity Date, the unpaid Outstanding Principal Balance and all accrued interest thereon shall continue to bear interest at the Default Rate until and including the date on which the entire Indebtedness and all outstanding Obligations due and owing under the Loan Documents are paid in full. During any period that the Default Rate is in effect the additional interest accruing over and above the Interest Rate provided for in Section 2 shall be immediately due and payable in addition to the regularly scheduled Monthly Payments.

Borrower acknowledges and agrees that the increase from the Interest Rate to the Default Rate represents a fair and reasonable estimate of the additional risks, costs and expenses Lender will incur by reason of Borrower's Default on account of the delinquent payment and the additional compensation Lender is entitled to receive for the increased risks of nonpayment associated with a delinquency on the Loan.

## 7. DEFAULTS

7.1    Events of Default. Each of the following shall constitute an event of default hereunder (each an "**Event of Default**"):

(a)    Any failure by Borrower to pay or deposit when due any amount required by this Note or any other Loan Document;

(b)    Any failure of Borrower to comply with any other covenant contained in this Note that calls for the payment of money;

(c)    If the payment of all of the Obligations due on the Maturity Date is not paid when due;

(d)    The Borrower fails to perform or observe any other covenant or agreement (not specified in Section 7.1(a), 7.1(b), or 7.1(c) above) contained in this Note or any Loan Document on its part to be performed or observed and such failure continues for 10 days;

(e)    Any representation, warranty, certification, covenant or statement of fact made or deemed made by or on behalf of the Borrower or any other Loan Party in this Note, in any other Loan Document, or in any document delivered in connection herewith or therewith shall be incorrect or misleading when made or deemed made;

(f)    Any failure of Borrower to maintain in full force and effect all Policies required

hereunder or any other Loan Document;

(g)     Any exercise by the holder of any debt instrument secured by a mortgage, deed of trust or deed to secure debt against any Property of a right to declare all amounts due under that debt instrument immediately due and payable;

(h)     The commencement of a forfeiture action or proceeding, whether civil or criminal, which, in Lender's reasonable judgment, could result in a forfeiture of any Property or otherwise materially impair the lien created by the Security Instrument or Lender's interest in any Property;

(i)     Material deviations in the work of construction from the Plans (or, where Lender has so designated, from approved shop or working drawings) without the approval of Lender (subject, however, to Borrower's right to make such changes in the work from the Plans as it desires in accordance with this Note and the Disbursement Agreement, so long as Borrower pays for any increase in costs of construction caused by said changes);

(j)     A Transfer other than a Permitted Transfer occurs (including without limitation, the creation or existence of any lien as provided in Section 3.20 of the Security Instrument);

(k)     The occurrence of any "Default" as defined in any other Loan Document in which a "Default" is defined, including, any breach, "Default" or "Event of Default" under any Loan Document;

(l)     If the Property is subject to any covenants, conditions and/or restrictions, land use restriction agreements or similar agreements, Borrower fails to perform any of its obligations under any such agreement as and when required, and such failure continues beyond any applicable cure period;

(m)     Borrower (if Borrower is a natural person) or any member, shareholder, partner or trustee of Borrower (if such member, shareholder, partner or trustee is a natural person), or any Guarantor who is a natural person, dies or becomes incompetent (unless, in the case of the death or incapacity of any member, shareholder or partner of Borrower, the Transfer of such member's, shareholder's or partner's interest in Borrower would have been a Permitted Transfer);

(n)     The occurrence of a Bankruptcy Event;

(o)     Any Loan Party or any Affiliate thereof (A) fails to make any payment when due (whether by scheduled maturity, required prepayment, acceleration, demand, or otherwise) in respect of any indebtedness or guarantee (other than under the Loan Documents) owed or owing to the Lender, or (B) fails to observe or perform any other agreement or condition relating to any such Indebtedness or guarantee owed or owing to the Lender or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event occurs, the effect of which default or other event is to cause, or to permit the Lender to cause, with the giving of notice if

required, such Indebtedness to be demanded or to become due (automatically or otherwise) prior to its stated maturity or such guarantee to become payable;

(p)    Any breach or default or other similar condition or event (however described) by Borrower or an Affiliate of Borrower under any other loan, note or agreement to which Lender or any Affiliate of Lender is also a party;

(q)    Borrower shall be in default under any mortgage or security agreement covering any part of the Property, whether it be superior or junior in Lien to the Security Instrument;

(r)    If the Property becomes subject to any mechanic's, materialman's or other lien, which is not removed or bonded over within thirty (30) days of filing, except a lien for taxes not then due and payable; and/or

(s)    Except as permitted herein and subject to Lender's prior written consent, the alteration, improvement, demolition or removal of any of the Improvements (as defined in the Security Instrument) without the prior written consent of Lender.

7.2    Remedies.

(a)    Acceleration. If an Event of Default has occurred and is continuing, the Indebtedness, entire Outstanding Principal Balance of this Note, any accrued interest, the Prepayment Premium, and all other Obligations of the Borrower under this Note and any other Loan Document, at the option of the Lender, shall immediately become due and payable, without any prior written notice to the Borrower, unless applicable law requires otherwise (and in such case, after any required notice has been given). The Lender may exercise this option to accelerate the Loan regardless of any prior forbearance. In addition, the Lender shall have all rights and remedies afforded to the Lender hereunder and under the other Loan Documents, including, without limitation, application of the Default Rate of Interest in accordance with Section 6, foreclosure on and/or the power of sale of the Property covered by the Security Instrument, as provided in the Security Instrument, and any rights and remedies available to the Lender at law or in equity. Notwithstanding the foregoing, the occurrence of any Bankruptcy Event shall automatically accelerate this Note and all Obligations under this Note and the other Loan Documents, and this Note and the Obligations under this Note and the other Loan Documents shall be immediately due and payable without written notice or further action by the Lender. Each right and remedy provided in this Note is distinct from all other rights or remedies under this Note or any other Loan Document or afforded by applicable Law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. The Lender shall not be required to demonstrate any actual impairment of its security or any increased risk of additional Default by the Borrower in order to exercise any of its remedies with respect to any Event of Default.

(b)    No Waiver by Lender. Any waiver of a Default, Event of Default or forbearance by the Lender in exercising any right or remedy under this Note or any other Loan Document or

otherwise afforded by applicable Laws, shall not be a waiver of any other Default or Event of Default or preclude the exercise or failure to exercise of any other right or remedy. Enforcement by the Lender of any security for the Obligations of the Borrower under this Note shall not constitute an election by the Lender of remedies so as to preclude the exercise or failure to exercise of any other right or remedy available to the Lender. The acceptance by Lender of any payment after the due date of such payment, or in an amount which is less than the required payment, shall not be a waiver of Lender's right to require prompt payment when due of all other payments or to exercise any right or remedy with respect to any failure to make prompt payment.

(c)    _Payment of Lender's Costs and Expenses_. The Borrower shall immediately reimburse the Lender for all fees and costs, including reasonable attorneys' fees and experts' fees and costs, incurred by the Lender for: (i) enforcement of this Note, any other Loan Document or any terms hereof or thereof, or the exercise of any rights or remedies hereunder or thereunder and/or at Law, in equity or otherwise, whether or not any action or proceeding is filed; (ii) representation of the Lender in any bankruptcy, insolvency, reorganization or other debtor-relief or similar proceeding under any Debtor Relief Law of or relating to any Loan Party or the Property covered by the Security Instrument; or (iii) representation of the Lender in any action or proceeding relating to the Property covered by the Security Instrument, whether commenced by the Lender or any other Person, including foreclosure, receivership, lien or stop-notice enforcement, bankruptcy, eminent domain and probate actions or proceedings. All such fees and costs shall bear interest until paid at the rate applicable from time to time under this Note.

## 8.    GIVING OF NOTICES

All notices, consents, approvals and requests required or permitted under this Note any Loan Document shall be given in writing by expedited prepaid delivery service, either commercial or United States Postal Service, with proof of delivery or attempted delivery, addressed as follows (except that any party hereto may change its address and other contact information for purposes hereof at any time by sending a written notice to the other parties to this Agreement in the manner provided for in this Section). A notice shall be deemed to have been given when delivered or upon refusal to accept delivery.

**If to Lender:**

> Civic Financial Services, LLC
> 2015 Manhattan Beach Blvd, Suite 106
> Redondo Beach, CA 90278
> Attention: Post-Closing
> CivicPostClosing@CivicFS.com

**If to Borrower:**

> Chantilly Road, LLC
> 578 Washington BLvd #148

Marina Del Rey, CA 90292
Attention: Diego Rudomin
Email: d.rudomin@gmail.com

**With Copy to:**

Fay Servicing
8000 Woodland Center Blvd.
Tampa, FL 33614
Attention: VP of Account Management
CommercialServicing@FayServicing.com

### 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one Person signs this Note, each Person is jointly, severally, fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount of all Obligations owed. Any Person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any Person who takes over these Obligations, including the Obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each Person individually or against all of such Persons together. This means that any one such Person may be required to pay all of the amounts owed under this Note.

### 10.    WAIVERS

The Borrower and each other Loan Party hereby waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other Persons that amounts due have not been paid. In addition, without limiting the foregoing, each Loan Party hereby waives diligence, demand, notice of non-payment, protest and notice of protest, and the Borrower and each other Loan Party (a) agrees that the time for performance of any Obligation under this Note may be extended from time to time without notice, (b) consents to the release without notice of any party liable hereon or herefor, (c) consents to the addition without notice of parties liable hereon or herefor, and (d) consents to the acceptance without notice of further security for this Note, including other types of security, all without in any way affecting their liability. Further, each Loan Party waives the right to plead any and all statutes of limitations as a defense to this Note, any guaranty hereof or any agreement to pay the Obligations hereof, or any other Loan Document, in each case to the full extent permitted by law. No provision of this Note or any other Loan Document may be waived or modified orally, it being expressly agreed that any such waiver or modification must be in a writing signed by the Lender.

### 11.    UNIFORM SECURED NOTE

The Indebtedness and all Obligations hereunder are secured by, among other things, the

Security Instrument and reference is made to the Security Instrument for other rights of Lender as to collateral for the Indebtedness. This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note, protects the Lender from possible losses which might result if the Borrower does not keep the promises made in this Note. That Security Instrument describes how and under what conditions the Borrower may be required to make immediate payment in full of all amounts the Borrower owes under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or Transferred, other than a Permitted Transfer (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or Transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable Law. If Borrower fails to pay these sums, Lender may invoke any remedies permitted by the Security Instrument without notice or demand on Borrower.

## 12.    LIABILITY; FULL PAYMENT

The Borrower is personally liable for the Indebtedness and all Obligations under this Note. All amounts payable under this Note shall be paid in full without setoff, deduction or counterclaim. All amounts payable under this Note shall be free and clear of and without any deduction or withholding for or on account of any Taxes, levies, duties, charges, fees, restrictions or conditions of any nature now or hereafter imposed by any Governmental Authority. The Borrower shall indemnify the Lender against any such Taxes, levies, imposts, duties, charges and fees (other than taxes on the income of the Lender imposed by any taxing authority) which may be assessed against the Lender or claimed or demanded from the Lender in respect of any amount payable by the Borrower hereunder, and against any costs, charges, expenses or liability arising out of or with respect to such assessment, claim or demand, to the full extent permitted by Law.

## 13.    BUSINESS PURPOSE LOAN; NO OCCUPANCY BY ANY LOAN PARTY

BORROWER AND EACH OTHER LOAN PARTY WILL USE THE PROCEEDS OF THE LOAN THAT BORROWER HAS RECEIVED UNDER THIS NOTE SOLELY FOR THE PURPOSE OF ACQUIRING OR REFINANCING REAL PROPERTY FOR INVESTMENT PURPOSES, AND BORROWER WARRANTS AND REPRESENTS TO THE LENDER THAT ALL LOAN PROCEEDS WILL BE SOLELY USED TO ACQUIRE OR REFINANCE REAL PROPERTY FOR INVESTMENT PURPOSES, AND THAT NO LOAN PROCEEDS WILL IN ANY EVENT BE USED FOR A CONSUMER, FAMILY OR HOUSEHOLD PURPOSE. BORROWER FURTHER WARRANTS AND REPRESENTS TO LENDER THAT: (A) NEITHER BORROWER NOR ANY OTHER LOAN PARTY NOR ANY LOAN PARTY'S SPOUSE, CHILD, DEPENDENT, OR PARENT WILL AT ANY TIME DURING THE TERM OF THIS NOTE INHABIT THE PROPERTY, AND (B) THE PROPERTY WILL NOT BE THE PRINCIPAL RESIDENCE OR SECONDARY RESIDENCE OF ANY LOAN PARTY OR

SPOUSE, CHILD, DEPENDENT, OR PARENT OF ANY LOAN PARTY.

14.    **GOVERNING LAW; SUBMISSION TO JURISDICTION; JURY TRIAL WAIVER AND JUDICIAL REFERENCE**

### (A) Governing Law; Submission to Jurisdiction

This Note shall be governed by and construed under the internal laws of the State of California, without regard to conflict of law provisions. The Borrower and Lender each irrevocably submit and consent to jurisdiction of any federal or state court of competent jurisdiction within California in connection with any action or proceeding arising out of, or relating to the Loan, this Note and the other Loan Document, and consent to service of process by any means allowed by California or federal law.

### (B) Waiver of Jury Trial

TO THE FULLEST EXTENT PERMITTED BY LAW, THE BORROWER AND LENDER EACH HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR (2) IN ANY WAY CONNECTED WITH, OR RELATED OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THE LOAN, THIS NOTE OR ANY OTHER LOAN DOCUMENT, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE (OTHER THAN ANY ACTION IN RESPECT OF THE CREATION, PERFECTION OR ENFORCEMENT OF A LIEN OR SECURITY INTEREST CREATED PURSUANT TO ANY LOAN DOCUMENTS NOT GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA); THE BORROWER AND LENDER EACH HEREBY AGREE AND CONSENT THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY TO THE FULLEST EXTENT PERMITTED BY LAW. THE BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH THE BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE THE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

### (C) Judicial Reference

IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER HEREBY EXPRESSLY AGREES TO SUBMIT TO JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1 ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE (PROVIDED, HOWEVER, THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO JUDICIAL

REFERENCE SHALL BE APPLICABLE WITH RESPECT TO ANY ACTION IN RESPECT OF THE FORECLOSURE OF THE SECURITY INSTRUMENT). PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 AND 640 TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. THE BORROWER ACKNOWLEDGES AND AGREES THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH THE BORROWER AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

## 15.    LOAN RESERVES

15.1    <u>Tax Reserve</u>. Unless waived by Lender in writing, Borrower shall deposit with Lender (i) on the Initial Disbursement Date an amount sufficient to pay all Taxes by the 30th day prior to the date they come due, assuming subsequent monthly fundings on Payment Due Dates of one-twelfth (1/12) of projected annual Taxes, plus (ii) on each Payment Due Date, an amount equal to one-twelfth (1/12) of the Taxes that Lender estimates will be payable during the next ensuing twelve (12) months (the **"Tax Reserve"**). At Lender's discretion, at origination, Borrower shall deposit with Lender additional amounts to be held in the Tax Reserve and applied towards the payment of Taxes that will be payable during the life of the Loan. If Lender makes such election, it shall be noted on the settlement statement at closing. If at any time Lender reasonably determines that the amount in the Tax Reserve will not be sufficient to accumulate (upon payment of subsequent monthly amounts in accordance with the provisions of this Note) the full amount of all installments of Taxes by the date on which such amounts come due, then Lender shall notify Borrower of such determination and Borrower shall increase its monthly deposit to the Tax Reserve by the amount that Lender reasonably estimates is sufficient to achieve such accumulation. Borrower shall provide Lender with copies of all tax bills relating to the Property promptly after Borrower's receipt thereof. Provided that no Event of Default has occurred and is continuing, Lender shall release funds from the Tax Reserve to pay Taxes due, subject to such conditions as Lender may reasonably require, including that Lender shall have received Tax bills for the same not less than thirty (30) days before the due dates thereof.

15.2    <u>Insurance Reserve</u>. Unless waived by Lender in writing, Borrower shall deposit with Lender on the Initial Disbursement Date an amount sufficient to pay all insurance costs for the Property that Lender estimates will be payable for the ensuing twelve (12) months and thereafter on each Payment Due Date one-twelfth (1/12) of the insurance premiums that Lender reasonably estimates will be payable during the ensuing twelve (12) months for renewal or replacement of the Policies upon the expiration thereof (the **"Insurance Reserve"**). At Lender's

discretion, at origination, Borrower shall deposit with Lender additional amounts to be held in the Insurance Reserve and applied towards the payment of insurance premiums that will be payable during the life of the Loan. If Lender makes such election, it shall be noted on the settlement statement at closing If at any time Lender reasonably determines that the amount in the Insurance Reserve will not be sufficient to pay the insurance premiums becoming due, Lender may so notify Borrower, and then commencing with the first Payment Due Date thereafter, the monthly deposits to the Insurance Reserve shall be increased by the amount that Lender estimates is sufficient to make up the deficiency at least thirty (30) days prior to expiration of the Policies. Provided no Event of Default has occurred and is continuing, Lender shall release funds in the Insurance Reserve to pay insurance premiums due with respect to the Policies, subject to such conditions as Lender may reasonably require, including that Lender shall have received invoices for the same not less than thirty (30) days before the due dates thereof.

15.3    [Reserved]

15.4    [Reserved]

15.5    <u>Reserve Funds Generally</u>. Any funds remaining in the Reserves (other than earnings or interest thereon) after the Obligations have been paid in full shall be returned to Borrower. Borrower shall not be entitled to any earnings or interest on funds deposited into the Reserves.

15.6    <u>Security Interest</u>. As security for the Obligations, Borrower hereby grants to Lender a continuing first-priority security interest in each Reserve and all amounts at any time contained therein and the proceeds thereof and will take all actions necessary to maintain in favor of Lender a perfected first priority security interest therein, including filing UCC-1 financing statements and continuations thereof.

## 16.    OFAC; ANTI-MONEY LAUNDERING

16.1    <u>USA PATRIOT Act</u>. The Lender hereby notifies the Borrower that pursuant to the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)) (the "**Act**"), it is required to obtain, verify and record information that identifies the Borrower and each other Loan Party, which information includes the name and address of the Borrower and each other Loan Party and other information that will allow the Lender to identify the Borrower and each other Loan Party in accordance with the Act. The Borrower and each other Loan Party shall, promptly following a request by the Lender, provide all documentation and other information that the Lender requests in order to comply with its ongoing obligations under applicable "know your customer" and anti-money laundering rules and regulations, including the Act.

16.2    <u>OFAC Representations</u>. Neither the Borrower, nor any other Loan Party, nor, to the knowledge of the Borrower, any director, officer, employee, agent, affiliate or representative thereof, is an individual or entity that is, or is owned or controlled by one or more individuals or

entities that are (i) currently the subject or target of any sanction administered or enforced by the United States Government (including without limitation, OFAC), the United Nations Security Council, the European Union, Her Majesty's Treasury ("**HMT**") or other relevant sanctions authority ("**Sanctions**"), (ii) included on the List of Specially Designated Nationals maintained by the Office of Foreign Assets Control of the United States Department of the Treasury ("**OFAC**") or HMT's Consolidated List of Financial Sanctions Targets, or any similar list enforced by any other relevant sanctions authority or (iii) located, organized or resident in any country or territory to the extent that such country or territory itself is the subject of any Sanction. The Borrower has conducted its businesses in compliance in all material respects with all applicable Sanctions and have instituted and maintained policies and procedures designed to promote and achieve compliance with such Sanctions.

16.3    <u>Representation re Anti-Corruption Laws</u>. The Borrower has conducted its business in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, and other applicable anti-corruption legislation in other jurisdictions and have instituted and maintained policies and procedures designed to promote and achieve compliance with such laws.

16.4    <u>Covenant re Anti-Corruption Laws</u>. The Borrower shall conduct its businesses in compliance in all material respects with the United States Foreign Corrupt Practices Act of 1977, the UK Bribery Act 2010, and other applicable anti-corruption legislation in other jurisdictions and with all applicable Sanctions, and maintain policies and procedures designed to promote and achieve compliance with such laws and Sanctions.

## 17.    SALE OF NOTE AND SECONDARY MARKET TRANSACTION

The Borrower understands that the Lender may assign, sell, pledge, securitize or transfer this Note or any interest (including, without limitation, participation interests) in this Note (each such sale, assignment, participation and/or securitization, a "**Secondary Market Transaction**") at any time and from time to time without notice to, or the consent of, the Borrower. The Lender or anyone who takes this Note in connection with a Secondary Market Transaction and who is entitled to receive payments under this Note is called the "**Note Holder**." The Borrower may not assign or transfer its rights or obligations under this Note without the prior written consent of the Note Holder, which the Note Holder may give or refuse in its sole and absolute discretion. This Note binds the Borrower and its successors, permitted assigns, heirs, administrators and executors, and inures to the benefit of the Note Holder and its successors, assigns, participants, heirs, administrators and executors. The Borrower shall (A) do anything necessary to comply with the reasonable requirements of the Note Holder or provide, or cause to be provided, to the Note Holder within ten (10) days of the request, at Borrower's cost and expense, such further documentation or information as the Note Holder may reasonably require, in order to enable the Note Holder to consummate a Secondary Market Transaction; (B) confirm that the Borrower is not in Default under this Note or any other Loan Document or in observing any of the covenants or agreements contained in this Note or any other Loan Document (or, if the Borrower is in Default, describing such Default in reasonable detail); and (C) execute and deliver to the Lender

such other documentation, including any amendments, corrections, deletions or additions to this Note as is reasonably required by the Note Holder.

**18.    [RESERVED]**

**19.    SERVICER**

Lender may delegate any and all rights and obligations of Lender under the Note and the other Loan Documents to the Servicer upon notice by Lender to Borrower, whereupon any notice or consent from the Servicer to Borrower, and any action by Servicer on Lender's behalf, shall have the same force and effect as if Servicer were Lender.

**20.    CONSTRUCTION**

Any reference in this Note to an "Exhibit" or "Schedule" or a "Section" or an "Article" shall, unless otherwise explicitly provided, be construed as referring, respectively, to an exhibit or schedule attached to this Note or to a Section or Article of this Note. Any reference in this Note to a statute or regulation shall be construed as referring to that statute or regulation as amended from time to time. Use of the singular in this Note includes the plural and use of the plural includes the singular. As used in this Note, the term "including" means "including, but not limited to" or "including, without limitation," and is for example only, and not a limitation. Whenever Borrower's knowledge is implicated in this Note or the phrase "to Borrower's knowledge" or a similar phrase is used in this Note, Borrower's knowledge or such phrase(s) shall be interpreted to mean to the best of Borrower's knowledge after reasonable and diligent inquiry and investigation. Unless otherwise provided in this Note, if Lender's or the Note Holder's approval, designation, determination, selection, estimate, action or decision is required, permitted or contemplated hereunder, such approval, designation, determination, selection, estimate, action or decision shall be made in Lender's or the Note Holder's sole and absolute discretion. All references in this Note to a separate instrument or agreement shall include such instrument or agreement as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time pursuant to the applicable provisions thereof. "Lender may" or "Note Holder may" shall mean at Lender's or Note Holder's sole discretion, but shall not be an obligation. If there are multiple Borrowers, "Borrower" means all and any one or more of them.

**21.    FINAL DOCUMENTS; NO ORAL AGREEMENTS**

THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE LOAN PARTIES AND THE LENDER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO ORAL AGREEMENTS BETWEEN THE LOAN PARTIES AND THE LENDER.

**22.    TIME IS OF THE ESSENCE**

The Borrower agrees that, with respect to each and every obligation and covenant

contained in this Note, time is of the essence.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

IN WITNESS WHEREOF, this Note has been duly executed by the Borrower as of the day and year first above written.

**BORROWER:**

Chantilly Road, LLC, a California Limited Liability Company
   By: Leviathan, LLC, a California Limited Liability Company, its Sole Member
     By: The Kraken, LLC, a California Limited Liability Company, its Sole Member

By: _____     By: _____
Name: Diego Rudomin                Name: Adrian Rudomin
Title: Manager                   Title: Manager

Address:

578 Washington BLvd #148
Marina Del Rey, CA 90292
Attention: Diego Rudomin

Organizational ID: 82-4745114

**Schedule A**

| Address & Property ID | Loan Amount | Undisbursed Loan Proceeds<br><br>Construction and Renovations Amount | Borrower Rehab Contribution Amount | Total Budget |
|---|---|---|---|---|
| 1116 Chantilly Rd.<br>Los Angeles, CA, 90077<br><br>ID: 4369-037-001 | $15,105,000.00 | $974,000.00 | $0.00 | $974,000.00 |

**Schedule B**

<u>Approved Budget</u>

See Attached Final Approved Rehab Feasibility / Budget

# EXHIBIT B



**This page is part of your document - DO NOT DISCARD**



## 20220123166



**Pages:**
**0040**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**02/01/22 AT 08:00AM**

| | |
|---|---:|
| FEES: | 201.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 225.00 |
| PAID: | 426.00 |



**L E A D S H E E T**



202202010970011

**00021891841**



013119064

**SEQ:**
**01**

SECURE - 8:00AM



**THIS FORM IS NOT TO BE DUPLICATED**

*E494220*                2676021844

*Recording Requested By :*

OLD REPUBLIC TITLE COMPANY
After Recording Return To:

Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278

_____ [Space Above This Line For Recording Data] _____

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

Loan Number: 0121121673

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the **"Security Instrument"**) dated as of **January 27, 2022**, is executed by **Chantilly Road, LLC, a California Limited Liability Company organized and existing under the laws of California**, as grantor (**"Borrower"**), to **Old Republic Title Company**, as trustee (**"Trustee"**), for the benefit of **Civic Financial Services, LLC, a California Limited Liability Company**, with an address of **2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278**, as beneficiary (**"Lender"**).

### W I T N E S S E T H :

A.    This Security Instrument is given to secure a loan (the "Loan") in the maximum principal sum of **Fifteen Million One Hundred Five Thousand Dollars and Zero Cents ($15,105,000.00)** or so much thereof as may have been disbursed and evidenced by that certain Promissory Note dated the date hereof made by Borrower to Lender.

B.    Borrower desires to secure the payment of the outstanding principal amount of the Loan outstanding from time to time together with all interest accrued and unpaid thereon and all other sums due to Lender in respect of the Loan under the Note and the other Loan Documents (as defined in the Note) and the performance of all of its Obligations under the Note and the other Loan Documents.

C.    This Security Instrument is given pursuant to the Note, and payment, fulfillment and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Note and the related documents, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by

2676021844

*Recording Requested By :*

OLD REPUBLIC TITLE COMPANY
After Recording Return To:

Civic Financial Services, LLC
2015 Manhattan Beach Blvd, Suite 106
Redondo Beach, CA 90278

_____ [Space Above This Line For Recording Data] _____

## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

Loan Number: 0121121673

This DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the **"Security Instrument"**) dated as of **January 27, 2022**, is executed by **Chantilly Road, LLC, a California Limited Liability Company organized and existing under the laws of California**, as grantor ("**Borrower**"), to **Old Republic Title Company**, as trustee ("**Trustee**"), for the benefit of **Civic Financial Services, LLC, a California Limited Liability Company**, with an address of **2015 Manhattan Beach Blvd, Suite 106, Redondo Beach, CA 90278**, as beneficiary ("**Lender**").

### W I T N E S S E T H :

A.    This Security Instrument is given to secure a loan (the "Loan") in the maximum principal sum of **Fifteen Million One Hundred Five Thousand Dollars and Zero Cents ($15,105,000.00)** or so much thereof as may have been disbursed and evidenced by that certain Promissory Note dated the date hereof made by Borrower to Lender.

B.    Borrower desires to secure the payment of the outstanding principal amount of the Loan outstanding from time to time together with all interest accrued and unpaid thereon and all other sums due to Lender in respect of the Loan under the Note and the other Loan Documents (as defined in the Note) and the performance of all of its Obligations under the Note and the other Loan Documents.

C.    This Security Instrument is given pursuant to the Note, and payment, fulfillment and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Note and the related documents, including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by

267602184 4

reference herein as though set forth in full and shall be considered a part of this Security Instrument.

**NOW THEREFORE**, in consideration of the making of the Loan by Lender and the covenants, agreements, representations and warranties set forth in this Security Instrument and other good and valuable consideration, the receipt and sufficiency of which are acknowledged by Borrower:

## 1.    Definitions

Capitalized terms used and not specifically defined herein have the meanings given to such terms in the Note. All terms used and not specifically defined herein, but which are otherwise defined by the UCC, shall have the meanings assigned to them by the UCC. The following terms, when used in this Security Instrument, shall have the following meanings:

"**Applicable Law**" means, collectively, all international, foreign, federal, state and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority, in each case whether or not having the force of law.

"**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners' association or similar organization.

"**Condemnation Action**" means any action or proceeding, however characterized or named, relating to any condemnation or other taking, or conveyance in lieu thereof, of all or any part of the Property, whether direct or indirect.

"**Default**" has the meaning set forth in the Note.

"**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

"**Escrow Items**" has the meaning set forth in Section 3.3 of this Security Instrument.

"**Event of Default**" has the meaning set forth in the Note.

"**Fixtures**" means all Goods that are so attached or affixed to the Land or the Improvements as to constitute a fixture under the laws of the Property Jurisdiction.

"**Future Advances**" has the meaning set forth in Section 8 of this Security Instrument.

"**Goods**" means all of Borrower's present and hereafter acquired right, title and interest in all

goods which are used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements, including inventory; furniture; furnishings; machinery, equipment, engines, boilers, incinerators, and installed building materials; systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light; antennas, cable, wiring, and conduits used in connection with radio, television, security, fire prevention, or fire detection, or otherwise used to carry electronic signals; telephone systems and equipment; elevators and related machinery and equipment; fire detection, prevention and extinguishing systems and apparatus; security and access control systems and apparatus; plumbing systems; water heaters, ranges, stoves, microwave ovens, refrigerators, dishwashers, garbage disposers, washers, dryers, and other appliances; light fixtures, awnings, storm windows, and storm doors; pictures, screens, blinds, shades, curtains, and curtain rods; mirrors, cabinets, paneling, rugs, and floor and wall coverings; fences, trees, and plants; swimming pools; exercise equipment; supplies; tools; books and records (whether in written or electronic form); websites, URLs, blogs, and social network pages; computer equipment (hardware and software); and other tangible personal property which is used now or in the future in connection with the ownership, management, or operation of the Land or the Improvements or are located on the Land or in the Improvements.

"**Improvements**" has the meaning set forth in Section 2 of this Security Instrument.

"**Indebtedness**" has the meaning set forth in the Note.

"**Land**" has the meaning set forth in Section 2 of this Security Instrument.

"**Leases**" means all present and future leases, subleases, licenses, concessions or grants or other possessory interests now or hereafter in force, whether oral or written, covering or affecting the Property, or any portion of the Property, and all modifications, extensions or renewals thereof.

"**Lien**" means any claim or charge against property for payment of a debt or an amount owed for services rendered, including any mortgage, deed of trust, deed to secure debt, security interest, tax lien, any materialman's or mechanic's lien, or any lien of a governmental authority, including any lien in connection with the payment of utilities, or any other encumbrance.

"**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges (including, without limitation, any Prepayment Premium (as defined in the Note)) and late charges due under the Note, any costs, fees and expenses payable by the Borrower under the Note and all sums due under this Security Instrument, plus interest.

"**Loan Documents**" has the meaning set forth in the Note.

"**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverage described in Section 3.5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

"**Note**" means the promissory note signed by Borrower in favor of Lender and dated **January 27, 2022**, as amended, restated, supplemented or otherwise modified from time to time. The Note states that Borrower owes Lender a maximum principal amount of **Fifteen Million One Hundred**

**Five Thousand Dollars and Zero Cents (US $15,105,000.00)** plus interest; Borrower has promised to pay interest on this debt and all amounts advanced thereunder in regular monthly installments and to pay the debt in full not later than **February 01, 2024.**

"**Permitted Encumbrance**" means only (i) the easements, restrictions and other matters listed in a schedule of exceptions to coverage in the title policy received and accepted by Lender on or about the date of this Security Instrument with respect to the Property, (ii) taxes for the current tax year that are not yet due and payable, (iii) statutory Liens such as carriers', warehousemen's, mechanics', materialmen's, repairmen's or other like Liens arising in the ordinary course of business which are not overdue for a period of more than thirty (30) days or which are being contested in good faith and by appropriate proceedings diligently conducted, but only so long as (A) Lender determines that adequate reserves with respect thereto are maintained on the books of the Borrower and (B) in Lender's opinion, such proceedings operate to prevent the enforcement of the Lien while those proceedings are pending, and (iv) such other encumbrances as Lender may permit (in a separate writing) in its sole and absolute discretion.

"**Personalty**" has the meaning set forth in Section 2 of this Security Instrument.

"**Property**" has the meaning set forth in Section 2 of this Security Instrument.

"**Property Jurisdiction**" means the jurisdiction in which the Land is located.

"**Rents**" means all rents (whether from residential or non-residential space), revenues and other income from the Land or the Improvements, including subsidy payments received from any sources, including payments under any "Housing Assistance Payments Contract" or other rental subsidy agreement (if any), parking fees, laundry and vending machine income and fees and charges for food, health care and other services provided at the Property, whether now due, past due, or to become due, and tenant security deposits.

"**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower:

| | |
|---|---|
| ☐ Condominium Rider | ☐ Planned Unit Development Rider |
| ☐ Revocable Trust Rider | ☐ Other: Non-Recourse Rider |
| ☐ Other: | ☐ Other: |

"**Secured Obligations**" has the meaning set forth in Section 2 of this Security Instrument.

"**Security Instrument**" means this document, which is dated **January 27, 2022,** together with all Riders to this document, as amended, restated, supplemented or otherwise modified from time to time.

"**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

"**Trustee**" is Old Republic Title Company.

"**UCC**" means the Uniform Commercial Code in effect in the Property Jurisdiction, as amended from time to time.

"**UCC Collateral**" means any or all of that portion of the Property in which a security interest may be granted under the UCC and in which Borrower has any present or hereafter acquired right, title or interest.

2. **Transfer of Rights in the Property**

This Security Instrument secures to Lender:

(a) the repayment of the Loan Indebtedness, and all amendments, restatements, renewals, extensions and modifications of the Note;

(b) the payment of such additional sums, or Future Advances (whether or not obligatory) with interest thereon as may be hereafter advanced or borrowed from the Lender, its successors or assigns, by the Borrower as evidenced by the Note the terms thereof secured by this Security Instrument (it being contemplated by Borrower and Lender that such future indebtedness may be incurred);

(c) the performance of each and every of Borrower's covenants, obligations, promises and agreements under this Security Instrument, the Note and the other Loan Documents (all of the foregoing obligations described in clauses (a) , (b) and (c) above are referred to in this Security Instrument as the "**Secured Obligations**"). To the extent permitted by Applicable Law, any sums hereafter advanced by or borrowed from Borrower, its successors or assigns, shall have the same priority as the original sums advanced by Lender and secured hereby.

For this purpose, Borrower irrevocably and unconditionally mortgages, grants, warrants and conveys to Trustee, in trust, for the benefit of Lender, with power of sale and right of entry and possession, all of the Borrower's present and hereafter acquired right, title and interest in and to all of the following:

(i) the property located in the State of California, County of Los Angeles described in **Exhibit A** attached hereto (which is incorporated herein by this reference) (the "**Land**"), which currently has the address of:

1116 Chantilly Rd.
Los Angeles, CA 90077

(ii) all of the buildings, structures, improvements, and alterations now constructed or at any time in the future constructed or placed upon the Land, including any future replacements, facilities, and additions and other construction on the Land (the "**Improvements**");

(iii) all Goods, accounts, choses of action, chattel paper, documents, general

intangibles (including software), payment intangibles, instruments, investment property, letter of credit rights, supporting obligations, computer information, source codes, object codes, records and data, all telephone numbers or listings, claims (including claims for indemnity or breach of warranty), deposit accounts and other property or assets of any kind or nature related to the Land or the Improvements now or in the future, including operating agreements, surveys, plans and specifications and contracts for architectural, engineering and construction services relating to the Land or the Improvements, and all other intangible property and rights relating to the operation of, or used in connection with, the Land or the Improvements, including all governmental permits relating to any activities on the Land (the **"Personalty"**);

(iv)      all current and future rights, including air rights, development rights, zoning rights and other similar rights or interests, easements, tenements, rights of way, strips and gores of land, streets, alleys, roads, sewer rights, waters, watercourses, and appurtenances related to or benefitting the Land or the Improvements, or both, and all rights-of-way, streets, alleys and roads which may have been or may in the future be vacated;

(v)      all insurance policies relating to the Property (and any unearned premiums) and all proceeds paid or to be paid by any insurer of the Land, the Improvements, the Personalty, or any other part of the Property, whether or not Borrower obtained the insurance pursuant to Lender's requirements;

(vi)      all awards, payments and other compensation made or to be made by any municipal, state or federal authority with respect to the Land, the Improvements, the Personalty, or any other part of the Property, including any awards or settlements resulting from (1) any Condemnation Actions, (2) any damage to the Property caused by governmental action that does not result in a Condemnation Action, or (3) the total or partial taking of the Land, the Improvements, the Personalty, or any other part of the Property under the power of eminent domain or otherwise and including any conveyance in lieu thereof;

(vii)      all contracts, options and other agreements for the sale of the Land, the Improvements, the Personalty, or any other part of the Property entered into by Borrower now or in the future, including cash or securities deposited to secure performance by parties of their obligations;

(viii)      all Leases and Lease guaranties, letters of credit and any other supporting obligation for any of the Leases given in connection with any of the Leases, and all Rents;

(ix)      all earnings, royalties, accounts receivable, issues and profits from the Land, the Improvements or any other part of the Property;

(x)      deposits in an amount sufficient to accumulate with Lender the entire sum required to pay the Escrow Items when due;

(xi)      all Reserves (as defined in the Note);

(xii)      all refunds or rebates of Escrow Items by any municipal, state or federal authority or insurance company (other than refunds applicable to periods before the real property tax year in which this Security Instrument is dated);

(xiii)      all tenant security deposits related to the Property;

(xiv)    all products and replacements of any of the foregoing, and all cash and non-cash proceeds from the conversion, voluntary or involuntary, of any of the above into cash or liquidated claims, and the right to collect such proceeds; and

(xv)    all of Borrower's right, title and interest in the oil, gas, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other interests and estates in, under and on the Property and other oil, gas and mineral interests with which any of the foregoing interests or estates are pooled or unitized.

All of the foregoing property described in clauses (i) through (xv) above is referred to in this Security Instrument as the "**Property**".

BORROWER REPRESENTS, WARRANTS AND COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, warrant and convey the Property and that the Property is unencumbered, except for encumbrances of record as of the date hereof. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record as of the date hereof. Borrower hereby releases, relinquishes, and waives, to the fullest extent allowed by Applicable Law, all rights and benefits, if any, under and by virtue of the homestead exemption laws of the Property Jurisdiction, if applicable.

WITHOUT LIMITING THE FOREGOING, to secure to Lender the payment and performance of the Secured Obligations, Borrower hereby pledges, assigns, and grants to Lender a continuing security interest in the UCC Collateral. This Security Instrument constitutes a security agreement and a financing statement under the UCC. This Security Instrument also constitutes a financing statement pursuant to the terms of the UCC with respect to any part of the Property that is or may become a Fixture under Applicable Law, and will be recorded as a "fixture filing" in accordance with the UCC. Borrower hereby authorizes Lender to file financing statements, continuation statements and financing statement amendments in such form as Lender may require to perfect or continue the perfection of this security interest without the signature of Borrower. If an Event of Default (as defined in the Note) has occurred and is continuing, Lender shall have the remedies of a secured party under the UCC or otherwise provided at law or in equity, in addition to all remedies provided by this Security Instrument and in any Loan Document (as defined in the Note). Lender may exercise any or all of its remedies against the UCC Collateral separately or together, and in any order, without in any way affecting the availability or validity of Lender's other remedies. For purposes of the UCC, the debtor is Borrower and the secured party is Lender. As of the date hereof, the name, address, and organizational ID of the debtor is set forth after Borrower's signature below (for the Borrower) and on the first page of this Security Instrument (for the Lender) which are the addresses from which information on the security interest may be obtained.

Borrower represents and warrants that: (1) Borrower maintains its chief executive office at the location set forth after Borrower's signature below, and Borrower will notify Lender in writing of any change in its chief executive office not less than ten (10) days prior to such change; (2) Borrower is the record owner of the Property; (3) Borrower's state of incorporation, organization, or formation, if applicable, is as set forth on Page 1 of this Security Instrument, and Borrower will notify Lender in writing of any change in its state of incorporation, organization, or

formation not less than ten (10) days prior to such change; (4) Borrower's exact legal name is as set forth on Page 1 of this Security Instrument, and Borrower will notify Lender in writing of any change in its name not less than ten (10) days prior to such change; (5) Borrower is the owner of the UCC Collateral subject to no Liens, charges or encumbrances other than the Lien hereof and the Permitted Encumbrances; (6) the UCC Collateral will not be removed from the Property without the consent of Lender; and (7) no financing statement covering any of the UCC Collateral or any proceeds thereof is on file in any public office except pursuant hereto.

All property of every kind acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the Lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further conveyance or assignment become subject to the Lien and security interest created by this Security Instrument. Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further deeds of trust, mortgages, deeds to secure debt, security agreements, financing statements, assignments and assurances as Lender shall require for accomplishing the purposes of this Security Instrument and to comply with the rerecording requirements of the UCC.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**3.    Uniform Covenants**

Borrower and Lender covenant and agree as follows:

**3.1    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**

Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges (including, without limitation, any Prepayment Premium (as defined in the Note)) and late charges due under the Note, and any costs, fees and expenses payable by the Borrower under the Note or this Security Instrument. Borrower shall also pay funds for Escrow Items pursuant to Section 3.3 of this Security Instrument. Payments due under the Note and this Security Instrument shall be made in U.S. currency in the manner provided under the Note. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 3.13 of this Security Instrument. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver

of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. In Lender's sole and absolute discretion, Lender may apply such payments at the time such payments are accepted or hold such payments until Borrower makes another payment sufficient to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such payments or return them to Borrower, in Lender's sole and absolute discretion. In any event, (a) Lender shall not be obligated to pay the Borrower any interest on unapplied payments or funds, and (b) if not earlier applied or returned, such payments or funds will be applied to the outstanding obligations under the Note immediately prior to foreclosure in any manner or order determined by Lender in its sole and absolute discretion. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

### 3.2    Application of Payments or Proceeds

Except as otherwise described in this Section 3.2, voluntary prepayments shall be applied as described in the Note. If at any time Lender receives, from Borrower or otherwise, any payment in respect of the Loan that is less than all amounts due and payable at such time, then Lender may apply such payment to amounts then due and payable in any manner and in any order determined by Lender or hold in suspense and not apply such payment at Lender's election in its sole and absolute discretion. Neither Lender's acceptance of a payment that is less than all amounts then due and payable, nor Lender's application of, or suspension of the application of, such payment, shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such payment to the Loan, Borrower's obligations under the Note and the other Loan Documents shall remain unchanged.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Monthly Payments.

### 3.3    Funds for Escrow Items

Borrower shall pay to Lender on each Payment Due Date under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a Lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; and (c) premiums for any and all insurance required by Lender under Section 15.2 of the Note and Section 3.5. These items described in the immediately preceding sentence are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and if so required, such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section 3.3. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall

furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 3.8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 3.8 and pay such amount, and Borrower shall then be obligated under Section 3.8 to repay to Lender any such amount so paid by Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 3.13 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.3. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds then held by Lender.

### 3.4    Charges; Liens

Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property, all leasehold payments or ground rents on the Property, if any, and all Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.3. Borrower shall promptly discharge any Lien on the Property other than Permitted Encumbrances. If Lender determines that any part of the Property is subject to a Lien other than Permitted Encumbrances, Lender may give Borrower a notice identifying the Lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the Lien. Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

### 3.5    Property Insurance

Borrower shall keep the Improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might

affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained by Lender might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3.5 shall become additional Indebtedness of Borrower secured by this Security Instrument. These amounts shall bear interest at the Interest Rate set forth in the Note from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied to the Secured Obligations, whether or not then due, in any manner and order determined by Lender in its sole and absolute discretion.

If Borrower fails to give notice to the Lender or the insurance carrier of an event of loss in a timely manner, abandons the Property or fails to file, negotiate or settle any available insurance claim or related matter in a timely manner, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 10 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 10-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 4.1 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in respect of the Property, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

### 3.6    Preservation, Maintenance and Protection of the Property; Inspections

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or permit waste to be committed on the Property. Notwithstanding the fact that Borrower is not residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration. Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

### 3.7    Borrower's Loan Application

Borrower shall be in Default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning the ABSENCE OF ANY OCCUPANCY OR USE OF THE PROPERTY AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER.

### 3.8    Protection of Lender's Interest in the Property and Rights Under this Security Instrument

If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument or any other Loan Document, or (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a

proceeding in bankruptcy (or under other Debtor Relief Laws), probate, for condemnation or forfeiture, for enforcement of a Lien on the Property or to enforce laws or regulations, including but not limited to Environmental Laws), or (c) Borrower has permitted the Property to remain vacant, or (d) then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (i) paying any sums secured by a Lien on the Property; (ii) entering upon the Property to make repairs or secure the Property; (iii) obtaining (or force-placing) the insurance required by the Loan Documents (iv) appearing in court; and (v) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding (or any other proceeding under any other Debtor Relief Law). Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 3.8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 3.8.

Any amounts disbursed by Lender under this Section 3.8 shall become additional debt of Borrower secured by this Security Instrument and shall be added to, and become part of, the Principal balance of the Indebtedness, be immediately due and payable. These amounts shall bear interest at the Note rate from the date of disbursement, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. The provisions of this Section 3.8 shall not be deemed to obligate or require Lender to incur any expense or take any action.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground or master lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

### 3.9    Assignment of Miscellaneous Proceeds; Forfeiture

(a)    To the fullest extent permitted by Applicable Law, all Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

(b)    If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums

secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied to the Secured Obligations, whether or not then due, in any manner or order determined by the Lender in its sole and absolute discretion.

(c)    In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(d)    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

(e)    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

(f)    If Borrower fails to pursue recovery of Miscellaneous Proceeds in a diligent manner, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 10 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. **"Opposing Party"** means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

(g)    Borrower shall be in Default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a Default if acceleration has not occurred by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

(h)    All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied to the Secured Obligations, whether or not then due, in any manner or order determined by the Lender in its sole and absolute discretion.

### 3.10   Borrower Not Released; Forbearance By Lender Not a Waiver

Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

### 3.11   Joint and Several Liability; Co-signers; Successors and Assigns Bound

Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 3.16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 3.17) and benefit the successors and assigns of Lender.

### 3.12   Loan Charges

Lender may charge Borrower fees for services performed in connection with Borrower's Default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, Property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits (and for purposes of making any such determination as to whether any interest exceeds the lawful maximum, it is understood and agreed that all such interest shall be amortized, prorated, allocated and spread over the full amount and term of all principal indebtedness of Borrower to Lender), then: (a) any such loan charge shall be reduced

by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

### 3.13    Notices

All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the address designated in the Note unless Borrower has designated a substitute notice address by no less than ten (10) days prior notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

### 3.14    Governing Law; Severability; Rules of Construction

EXCEPT AS EXPRESSLY SET FORTH IN THIS PARAGRAPH AND TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF CALIFORNIA (WITHOUT REGARD TO CONFLICTS OF LAWS PRINCIPLES) SHALL GOVERN ALL MATTERS RELATING TO THIS SECURITY INSTRUMENT, THE NOTE PROVISIONS INCORPORATED HEREIN BY REFERENCE, AND ALL OF THE INDEBTEDNESS AND OBLIGATIONS ARISING HEREUNDER OR THEREUNDER; PROVIDED, HOWEVER, THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT TO THIS SECURITY INSTRUMENT SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE LAND IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF CALIFORNIA SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF THIS SECURITY INSTRUMENT AND ALL OF THE OBLIGATIONS ARISING HEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS SECURITY INSTRUMENT, AS THIS SECURITY INSTRUMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA TO THE EXTENT SET FORTH IN THIS PARAGRAPH.

All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

### 3.15    Borrower's Copy

Borrower shall be given one copy of the Note and of this Security Instrument.

### 3.16    Transfer of the Property or a Beneficial Interest in Borrower

Borrower shall not permit or suffer any Transfer to occur other than a Permitted Transfer in accordance with the terms of the Note. The occurrence of any Transfer other than a Permitted Transfer shall constitute an Event of Default. As used in this Section 3.16, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser. If all or any part of the Property or any Interest in the Property is sold or Transferred (other than a Permitted Transfer) without Lender's prior written consent, Lender shall require immediate payment in full of all sums secured by this Security Instrument. If Borrower fails to pay these sums, Lender may invoke any remedies permitted by this Security Instrument without notice or demand on Borrower.

### 3.17    Sale of Note; Change of Loan Servicer; Notice of Grievance

The Note or a partial interest in the Note (together with this Security Instrument) can be sold by the Lender one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects all payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information required by Applicable Law in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

The Borrower may not commence or join any judicial action (as either an individual litigant

or the member of a class) that arises from the Lender's actions pursuant to this Security Instrument or that alleges that the Lender has breached any provision of, or any duty owed by reason of, this Security Instrument, until the Borrower has notified the Lender (with such notice given in compliance with the requirements of Section 3.13) of such alleged breach and afforded the Lender hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

### 3.18    Hazardous Substances

As used in this Section 3.18: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

### 3.19    Use of Property; Compliance with Law

Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body or Governmental

Authority applicable to the Property.

### 3.20   Liens

Other than Permitted Encumbrances, Borrower shall not allow any Lien, whether inferior or superior to the Security Instrument, to exist, attach or be perfected against the Property. Borrower acknowledges that the grant, creation or existence of any Lien on the Property (other than the Lien of this Security Instrument) or on certain ownership interests in Borrower, whether voluntary, involuntary or by operation of law, and whether or not such Lien has priority over the Lien of this Security Instrument, is a "Transfer" which constitutes an Event of Default.

### 3.21   [Reserved]

### 3.22   Assignment of Leases and Rents; Appointment of Receiver; Lender in Possession

Borrower absolutely and unconditionally assigns and transfers to Lender all of the Leases and Rents, regardless of to whom the Rents of the Property are payable. It is the intention of Borrower to establish present, absolute and irrevocable transfers and assignments to Lender of all Leases and Rents and to authorize and empower Lender to collect and receive all Rents without the necessity of further action on the part of Borrower. Borrower and Lender intend the assignments of Leases and Rents to be effective immediately and to constitute absolute present assignments, and not assignments for additional security only. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, until an Event of Default has occurred and is continuing, Borrower shall have a revocable license to exercise all rights, power and authority granted to Borrower under the Leases (including the right, power and authority to modify the terms of any Lease, extend or terminate any Lease, or enter into new Leases, and to collect and receive all Rents, to hold all Rents in trust for the benefit of Lender, and to apply all Rents to pay amounts then due and payable under the other Loan Documents and to pay the current costs and expenses of managing, operating and maintaining the Property, including utilities, tenant improvements and other capital expenditures. So long as no Event of Default has occurred and is continuing, the Rents remaining after application pursuant to the preceding sentence may be retained and distributed by Borrower. This assignment of Leases and Rents constitutes a present, outright, immediate, continuing and absolute assignment and not an assignment for additional security only. This assignment to Lender shall not be construed to bind Lender to the performance of any of the covenants, conditions or provisions contained in any Lease or otherwise impose any obligation upon Lender. Lender shall have no responsibility on account of this assignment for the control, care, maintenance, management or repair of the Property, for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property. Borrower agrees to execute and deliver to Lender such additional instruments, in form and substance satisfactory to Lender, as may hereafter be reasonably requested by Lender to further evidence and confirm such assignment.

If an Event of Default has occurred and is continuing: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property, without the necessity of Lender entering upon and taking control of the

Property directly, by a receiver, or by any other manner or proceeding permitted by the laws of the Property Jurisdiction; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless Applicable Law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument in the manner and order determined by the Lender in its sole and absolute discretion; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security, and if Lender elects to seek the appointment of a receiver for the Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte*, if permitted by Applicable Law; (vii) Lender shall have the right to enforce all of the rights and remedies of an assignee under California Civil Code Section 2938; (viii) Lender shall have the immediate and continuing right, power and authority, either in person or by agent, without bringing any action or proceeding, or by a receiver appointed by a court, without the necessity of taking possession of the Property in its own name, and without the need for any other authorization or action by Borrower or Lender, in addition to and without limiting any of Lender's rights and remedies hereunder, under the Note and any other Loan Documents and as otherwise available at law or in equity: (1) to notify any tenant or other person that the Leases have been assigned to Lender and that all Rents are to be paid directly to Lender, whether or not Lender has commenced or completed foreclosure or taken possession of the Property; (2) to settle, compromise, release, extend the time of payment of, and make allowances, adjustments and discounts of any Rents or other obligations in, to and under the Leases; (3) to demand, sue for, collect, receive, and enforce payment of Rents, including those past-due and unpaid and other rights under the Leases, prosecute any action or proceeding, and defend against any claim with respect to the Leases and Rents; (4) to enter upon, take possession of and operate the Property whether or not foreclosure under this Security Instrument has been instituted and without applying for a receiver; (5) to lease all or any part of the Property; and/or (6) to perform any and all obligations of Borrower under the Leases and exercise any and all rights of Borrower therein contained to the full extent of Borrower's rights and obligations thereunder.

At Lender's request, Borrower shall deliver a copy of this Security Instrument to each tenant under a Lease and to each manager and managing agent or operator of the Property, and Lender shall have the continuing right to do so. Borrower irrevocably directs any tenant, manager, managing agent, or operator of the Property, without any requirement for notice to or consent by Borrower, to comply with all demands of Lender under this Section 3.22 and to turn over to Lender on demand all Rents that it receives. Borrower hereby acknowledges and agrees that payment of any Rents by a person to Lender as hereinabove provided shall constitute payment by such person, as fully and with the same effect as if such Rents had been paid to

Borrower. Neither the enforcement of any of the remedies under this Section 3.22 nor any other remedies or security interests afforded to Lender under the Loan Documents, at law or in equity shall cause Lender to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise. Borrower shall, and hereby agrees to indemnify Lender for, and to hold Lender harmless from and against, any and all claims, liability, expenses, losses or damages that may or might be asserted against or incurred by Lender solely by reason of Lender's status as an assignee pursuant to the assignment of Leases and Rents contained herein, but excluding any claim to the extent caused by Lender's gross negligence or willful misconduct. Should Lender incur any such claim, liability, expense, loss or damage, the amount thereof, including all actual expenses and reasonable fees of attorneys, shall constitute Secured Obligations secured hereby, and Borrower shall reimburse Lender therefor within ten (10) days after demand.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become Indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 3.8.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this Section 3.22.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a Default occurs. Any application of Rents shall not cure or waive any Default or Event of Default or invalidate any other right or remedy of Lender. This assignment of Leases and Rents shall terminate when all the sums secured by the Security Instrument are paid in full.

### 3.23   Pledge of Monies Held

Borrower hereby pledges to Lender any and all monies now or hereafter held by Lender, including, without limitation, any sums deposited in the escrow as Reserves pursuant to the Note and as further provided in Section 3.3 above, insurance proceeds as provided in Section 3.5 above and Miscellaneous Proceeds as provided in Section 3.9 above, as additional security for Borrower's performance of its obligations under the Note, this Security Instrument and all of the other Loan Documents, until expended or applied as provided in this Security Instrument. It is hereby acknowledged and agreed that Borrower has granted Lender a security interest in the Reserves pursuant to the Note and as further provided in Section 3.3 above. At any time an Event of Default has occurred and is continuing, all such monies may be applied by the Lender to the Secured Obligations, whether or not then due, in any manner or order determined by the Lender in its sole and absolute discretion.

### 3.24   Other Loan Documents

Any breach or default by Borrower or any Affiliate of Borrower under the Note and the other obligations stated in the other Loan Documents specifically relating to the loan evidenced

by the Note shall be a breach under this Security Instrument, and Lender may invoke any of the remedies permitted by this Security Instrument.

**4.    Non-Uniform Covenants**

Borrower and Lender further covenant and agree as follows:

**4.1    Default; Acceleration; Remedies**

(a)    **Remedies.** If an Event of Default has occurred and is continuing, Lender may, at Lender's election and by or through Trustee or otherwise, take such action permitted at law or in equity, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and to the Property, including but not limited to, any or all of the following rights, remedies and recourses each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

(i)    Acceleration. Declare the Secured Obligations to be immediately due and payable, without further notice, presentment, protest, notice of intent to accelerate, notice of acceleration, demand or action of any nature whatsoever (each of which hereby is expressly waived by Borrower), whereupon the same shall become immediately due and payable.

(ii)    Entry on Property. Enter the Property and take exclusive possession thereof and of all books, records and accounts relating thereto. If Borrower remains in possession of the Property after the occurrence and during the continuance of an Event of Default and without Lender's prior written consent, Lender may invoke any legal remedies to dispossess Borrower.

(iii)    Operation of Property. Whether or not a receiver has been appointed pursuant to this Security Instrument, hold, lease, develop, manage, operate, control and otherwise use the Property upon such terms and conditions as Lender may deem reasonable under the circumstances (making such repairs, alterations, additions and improvements and taking other actions, from time to time, as Lender deems reasonably necessary or desirable), exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including the right to make, cancel, enforce or modify leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents, and apply all Rents and other amounts collected by Lender or Trustee in connection therewith in accordance with the provisions of Section 4.1(g).

(iv)    Foreclosure and Sale. Institute proceedings for the complete foreclosure of this Security Instrument, either by judicial action or by exercise of the STATUTORY POWER OF SALE or otherwise, in which case the Property may be sold for cash or credit in one or more parcels or in several interests or portions and in any order or manner in accordance with applicable law governing foreclosures. At any such sale by virtue of any judicial proceedings or any other legal right, remedy or recourse including power of sale, the title to and right of possession of any such property shall pass to the purchaser thereof, and to the fullest extent permitted by law, Borrower shall be completely and irrevocably divested of all of its right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the property sold

and such sale shall be a perpetual bar both at law and in equity against Borrower, and against all other persons claiming or to claim the property sold or any part thereof, by, through or under Borrower. Lender may be a purchaser at such sale and if Lender is the highest bidder, may credit the portion of the purchase price that would be distributed to Lender against the Secured Obligations in lieu of paying cash. At any such sale (A) whether made under the power herein contained, the UCC, any other legal requirement or by virtue of any judicial proceedings or any other legal right, remedy or recourse, including power of sale, it shall not be necessary for Trustee to be physically present at or to have constructive possession of the Property (Borrower shall deliver to Trustee any portion of the Property not actually or constructively possessed by Trustee immediately upon demand by Trustee), and the title to and right of possession of any such property shall pass to the purchaser thereof, as completely as if Trustee had been actually present and delivered to purchaser at such sale, (B) each instrument of conveyance executed by Trustee shall contain a general warranty of title, binding upon Borrower, (C) each recital contained in any instrument of conveyance made by Trustee shall conclusively establish the truth and accuracy of the matters recited therein, including, without limitation, nonpayment of the Secured Obligations, advertisement and conduct of such sale in the manner provided herein and otherwise by law, and appointment of any successor Trustee hereunder, (D) any prerequisites to the validity of such sale shall be conclusively presumed to have been performed, and (E) the receipt of Trustee or other party making the sale shall be a sufficient discharge to the purchaser or purchasers for his/her/their purchase money and no such purchaser or purchasers, or his/her/their assigns or personal representatives, shall thereafter be obligated to see to the application of such purchase money or be in any way answerable for any loss, misapplication or nonapplication thereof. With respect to any notices required or permitted under the UCC, Borrower agrees that ten (10) business days' prior written notice shall be deemed commercially reasonable.

     (v)    <u>Receiver</u>. Prior to, concurrently with, or subsequent to the institution of foreclosure proceedings, make application to a court of competent jurisdiction for, and (to the extent permitted by applicable law) obtain from such court as a matter of strict right and without notice to Borrower or anyone claiming under Borrower or regard to the value of the Property or the solvency or insolvency of Borrower or the adequacy of any collateral for the repayment of the Secured Obligations or the interest of Borrower therein, the appointment of a receiver or receivers of the Property, and Borrower irrevocably consents to such appointment. Any such receiver or receivers shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Property upon such terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of Section 4.1(g).

     (vi)    <u>Other</u>. Exercise all other rights, remedies and recourses granted under the Loan Documents or otherwise available at law or in equity (including an action for specific performance of any covenant contained in the Loan Documents, or a judgment on the Note either before, during or after any proceeding to enforce this Security Instrument).

    (b)    **Separate Sales**. In connection with the exercise by Lender or Trustee of its rights and remedies hereunder, the Property may be sold in one or more parcels and in such manner and order as Lender in its sole discretion, may elect, subject to applicable law; the right of sale

arising out of any Event of Default shall not be exhausted by any one or more sales.

(c)     **Remedies Cumulative, Concurrent and Nonexclusive**. Lender shall have all rights, remedies and recourses granted in the Loan Documents and available at law or equity (including the UCC), which rights (a) shall be cumulative and concurrent and shall be in addition to every other remedy so provided or permitted, (b) may be pursued separately, successively or concurrently against Borrower, or against the Property, or against any one or more of them, at the sole discretion of Lender, (c) may be exercised as often as occasion therefor shall arise, and the exercise or failure to exercise any of them shall not be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, nonexclusive. No action by Lender or Trustee in the enforcement of any rights, remedies or recourses under the Loan Documents or otherwise at law or equity shall be deemed to cure any Event of Default.

(d)     **Release of and Resort to Collateral**. Lender may release, regardless of consideration and without the necessity for any notice to or consent by the holder of any subordinate Lien on the Property, any part of the Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the Lien or security interests created in or evidenced by the Loan Documents or their stature as a first and prior Lien and security interest in and to the Property. For payment of the Secured Obligations, Lender may resort to any other security in such order and manner as Lender may elect.

(e)     **Waiver of Redemption, Notice and Marshaling of Assets**. To the fullest extent permitted by law, Borrower hereby irrevocably and unconditionally waives and releases (a) all benefit that might accrue to Borrower by virtue of any present or future statute of limitations or "moratorium law" or other law or judicial decision exempting the Property or any part thereof, or any part of the proceeds arising from any sale of any such property, from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption reinstatement (to the extent permitted by law) or extension of time for payment, (b) any right to a marshaling of assets or a sale in inverse order of alienation, and (c) any and all rights it may have to require that the Property be sold as separate tracts or units in the event of foreclosure.

(f)     **Discontinuance of Proceedings**. If Lender shall have proceeded to invoke any right, remedy or recourse permitted under the Loan Documents and shall thereafter elect to discontinue or abandon it for any reason, Lender shall have the unqualified right to do so and, in such an event, Borrower and Lender shall be restored to their former positions with respect to the Secured Obligations, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the right, remedy or recourse had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default that may then exist or the right of Lender thereafter to exercise any right, remedy or recourse under the Loan Documents for such Event of Default.

(g)     **Application of Proceeds**. Except as otherwise provided in the Loan Documents and unless otherwise required by applicable law, the proceeds of any sale of, and the Rents and other amounts generated by the holding, leasing, management, operation or other use of the Property, shall be applied by Lender or Trustee (or the receiver, if one is appointed) in the

following order or in such other order as Lender shall determine in its sole discretion: (a) to all fees, costs and expenses incurred by the Lender or the Trustee in enforcing the Loan Documents, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to the Secured Obligations, whether or not then due, in any order or manner determined by the Lender; and (c) any excess to the Person or Persons legally entitled to it.

(h)    **Occupancy After Foreclosure.** The purchaser at any foreclosure sale pursuant to Section 4.1(a)(iv) shall become the legal owner of the Property. All occupants of the Property shall, at the option of such purchaser, become tenants of the purchaser at the foreclosure sale and shall deliver possession thereof immediately to the purchaser upon demand. It shall not be necessary for the purchaser at said sale to bring any action for possession of the Property other than the statutory action of forcible detainer in any court having jurisdiction over the Property.

(i)    **Additional Advances and Disbursements; Costs of Enforcement.** If an Event of Default is continuing, Lender shall have the right, but not the obligation, to cure such Event of Default in the name and on behalf of Borrower. All sums advanced and expenses incurred at any time by Lender under this Section, or otherwise under this Security Instrument or any of the other Loan Documents or applicable law, shall bear interest from the date that such sum is advanced or expense incurred, to and including the date of reimbursement, computed at the Default Rate (as defined in the Note), and all such sums, together with interest thereon, shall constitute additions to the Secured Obligations and shall be secured by this Security Instrument and Borrower covenants and agrees to pay them to the order of Lender promptly upon demand.

(j)    **No Lender in Possession.** Neither the enforcement of any of the remedies under this Section 4, the assignment of the Leases and Rents under Section 3.22, nor any other remedies afforded to Lender under the Loan Documents, at law or in equity shall cause Lender or Trustee to be deemed or construed to be a mortgagee in possession of the Property, to obligate Lender or Trustee to lease the Property or attempt to do so, or to take any action, incur any expense, or perform or discharge any obligation, duty or liability whatsoever under any of the Leases or otherwise.

This Section 4.1 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in **Exhibit B** attached hereto.

**4.2    Reconveyance**

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable. This Section 4.2 shall be subject to (and shall be deemed modified by) any state specific provisions set forth in Exhibit B attached hereto.

**4.3    Substitute Trustee**

Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

### 4.4    Statement of Obligation Fee

Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

### 4.5    Use of Property

BORROWER WILL AT NO TIME DURING THE TERM OF THE LOAN INHABIT THE PROPERTY. THE PROPERTY IS OWNED AND HELD BY BORROWER AS AN INVESTMENT PROPERTY. NONE OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER NOW OCCUPIES OR USES THE PROPERTY, AND NONE OF THEM HAS ANY PRESENT INTENTION TO OCCUPY OR USE THE PROPERTY IN THE FUTURE AS A PRINCIPAL RESIDENCE OR SECOND HOME OF ANY OF BORROWER OR ANY OWNER, EMPLOYEE OR OTHER AFFILIATE OF BORROWER. EACH OF BORROWER AND ITS OWNERS, EMPLOYEES AND OTHER AFFILIATES NOW OCCUPIES AND USES OTHER PROPERTY OR PROPERTIES AS SUCH PERSON'S PRINCIPAL OFFICE, RESIDENCE AND/OR SECOND HOME.

### 5.    State Specific Provisions

The provisions of **Exhibit B** attached hereto are hereby incorporated by reference as though set forth in full herein.

### 6.    Obligations and Reliance; Further Assurances

### 6.1    Obligations and Reliance

(a)    **Relationship of Borrower and Lender**. The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of any of the Note, this Security Instrument and the other Loan Documents shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

(b)    **No Reliance on Lender**. The members, general partners, principals and (if Borrower is a trust) beneficial owners of Borrower are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property. Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

(c)    **No Lender Obligations**. By accepting or approving anything required to be

observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Note or the other Loan Documents, including without limitation, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

(d)     **Reliance**. Borrower recognizes and acknowledges that in accepting the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations made by Borrower herein and therein without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof; that the warranties and representations are a material inducement to Lender in accepting the Note, this Security Instrument and the other Loan Documents; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth herein and therein.

### 6.2    Further Assurances

(a)     **Recording of Security Instrument, etc.** Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect and perfect the Lien or security interest hereof upon, and the interest of Lender in, the Property. Borrower will pay all taxes, filing, registration or recording fees, and all expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note or deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

(b)     **Further Acts, etc.** Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender and Trustee the Property and rights hereby deeded, mortgaged, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or

recording this Security Instrument, or for complying with all Applicable Law. Borrower, on demand, will execute and deliver and hereby authorizes Lender, following 10 days' notice to Borrower, to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements (including, without limitation, initial financing statements, amendments thereto and continuation statements) with or without the signature of Borrower as authorized by Applicable Law, chattel mortgages or other instruments, to evidence more effectively the security interest of Lender in the Property. Borrower also ratifies its authorization for Lender to have filed any like initial financing statements, amendments thereto and continuation statements, if filed prior to the date of this Security Instrument. Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender pursuant to this Section 6.2(b). To the extent not prohibited by Applicable Law, Borrower hereby ratifies all acts Lender has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

      (c)    **Changes in Tax, Debt Credit and Documentary Stamp Laws**

      (1)    If any Law is enacted or adopted or amended after the date of this Security Instrument which deducts the Secured Obligations from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Secured Obligations or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any. If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender or unenforceable or provide the basis for a defense of usury, then Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the Secured Obligations immediately due and payable.

      (2)    Borrower will not claim or demand or be entitled to any credit or credits on account of the Secured Obligations for any part of the taxes or other charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Secured Obligations. If such claim, credit or deduction shall be required by Law, Lender shall have the option, exercisable by written notice of not less than ninety (90) days, to declare the Secured Obligations immediately due and payable.

      (3)    If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents or impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

      (d)    **Replacement Documents.** Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Borrower will issue (or cause to be issued), in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or

mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

**7.     Indemnification; Waivers**

    **7.1     Indemnification**

    (a)     **General Indemnification.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties (defined below) from and against any and all Losses (defined below) imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any one or more of the following: (a) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (b) any use, nonuse or condition in, on or about the Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Property or any part thereof; (d) any failure of the Property to be in compliance with any Applicable Law; (e) any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease; or (f) the payment of any commission, charge or brokerage fee to anyone which may be payable in connection with the funding of the Loan evidenced by the Note. Any amounts payable to Lender by reason of the application of this Section 7.1(a) shall become immediately due and payable and shall bear interest at the rate of interest set forth in the Note from the date loss or damage is sustained by Lender until paid in full.

    (b)     The term "**Losses**" shall mean any and all claims, suits, liabilities (including, without limitation, strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, charges, fees, expenses, judgments, awards, and amounts paid in settlement of whatever kind or nature (including but not limited to attorneys' fees and other costs of defense). The term "**Indemnified Parties**" shall mean (i) Lender, (ii) any prior owner or holder of the Note, (iii) any servicer or prior servicer of the Loan, (iv) the officers, directors, shareholders, partners, members, employees and trustees of any of the foregoing, and (v) the heirs, legal representatives, successors and assigns of each of the foregoing.

    (c)     **Mortgage and/or Intangible Tax.** Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon or incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other Loan Documents.

    (d)     **Duty to Defend; Attorneys' Fees and Other Fees and Expenses.** Upon written request by any Indemnified Party, Borrower shall defend such Indemnified Party (if requested by any Indemnified Party, in the name of the Indemnified Party) by attorneys and other professionals approved by the Indemnified Parties. Notwithstanding the foregoing, any Indemnified Parties may, in their sole discretion, engage their own attorneys and other

professionals to defend or assist them, and, at the option of Indemnified Parties, their attorneys shall control the resolution of any claim or proceeding. Upon demand, Borrower shall pay or, in the sole discretion of the Indemnified Parties, reimburse, the Indemnified Parties for the payment of reasonable fees and disbursements of attorneys, engineers, environmental consultants, laboratories and other professionals in connection therewith.

### 7.2    Waivers

(a)    **Waiver of Counterclaim.** Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Note, any of the Loan Documents, or any of Borrower's obligations thereunder.

(b)    **Marshalling and Other Matters.** To the extent permitted by law, Borrower hereby expressly waives:

(1)    the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Property or any part thereof or any interest therein; and

(2)    any and all rights of redemption from sale under any order or decree of foreclosure of this Security Instrument on behalf of Borrower, and on behalf of each and every Person acquiring any interest in or title to the Property subsequent to the date of this Security Instrument and on behalf of all Persons to the extent permitted by Applicable Law.

(c)    **Waiver of Notice.** Borrower shall not be entitled to any notices of any nature whatsoever from Lender or Trustee except (a) with respect to matters for which this Security Instrument specifically and expressly provides for the giving of notice by Lender or Trustee to Borrower and (b) with respect to matters for which Lender or Trustee is required by Applicable Law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender or Trustee with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender or Trustee to Borrower.

(d)    **Waiver of Statute of Limitations.** Borrower hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment of the Secured Obligations or performance of its other obligations under this Security Instrument, the Note and the other Loan Documents.

(e)    **Sole Discretion of Lender.** Wherever pursuant to this Security Instrument, the Note or any other Loan Document, (a) Lender exercises any right given to it to approve or disapprove, (b) any arrangement or term is to be satisfactory to Lender, or (c) any other decision or determination is to be made by Lender, the decision of Lender to approve or disapprove, all decisions that arrangements or terms are satisfactory or not satisfactory and all other decisions and determinations made by Lender, shall be in the sole discretion of Lender, except as may be otherwise expressly and specifically provided herein.

(f)    **WAIVER OF RIGHT TO TRIAL BY JURY.** BORROWER HEREBY EXPRESSLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, THE RIGHT TO TRIAL BY JURY IN ANY ACTION,

PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE LOAN EVIDENCED BY THE NOTE, THE APPLICATION FOR THE LOAN EVIDENCED BY THE NOTE, THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS OR ANY ACTS OR OMISSIONS OF LENDER, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. BORROWER AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY, AND BEING AFFORDED THE OPPORTUNITY TO HAVE BORROWER'S LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN. ANY PARTY MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THE RIGHT TO TRIAL BY JURY.

(g)   **JUDICIAL REFERENCE.** NOTWITHSTANDING SECTION 7.2(F) HEREOF TO THE CONTRARY, IN THE EVENT THAT THE JURY TRIAL WAIVER CONTAINED HEREIN SHALL BE HELD OR DEEMED TO BE UNENFORCEABLE, BORROWER AND LENDER HEREBY EXPRESSLY AGREE TO SUBMIT TO JUDICIAL REFERENCE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1 ANY CLAIM, DEMAND, ACTION ARISING HEREUNDER FOR WHICH A JURY TRIAL WOULD OTHERWISE BE APPLICABLE OR AVAILABLE (PROVIDED, HOWEVER, THAT NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, NO JUDICIAL REFERENCE SHALL BE APPLICABLE WITH RESPECT TO ANY ACTION IN RESPECT OF THE FORECLOSURE OF THE SECURITY INSTRUMENT). PURSUANT TO SUCH JUDICIAL REFERENCE, THE PARTIES AGREE TO THE APPOINTMENT OF A SINGLE REFEREE AND SHALL USE THEIR BEST EFFORTS TO AGREE ON THE SELECTION OF A REFEREE. IF THE PARTIES ARE UNABLE TO AGREE ON A SINGLE REFEREE, A REFEREE SHALL BE APPOINTED BY THE COURT UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 AND 640 TO HEAR ANY DISPUTES HEREUNDER IN LIEU OF ANY SUCH JURY TRIAL. BORROWER AND LENDER ACKNOWLEDGE AND AGREE THAT THE APPOINTED REFEREE SHALL HAVE THE POWER TO DECIDE ALL ISSUES IN THE APPLICABLE ACTION OR PROCEEDING, WHETHER OF FACT OR LAW, AND SHALL REPORT A STATEMENT OF DECISION THEREON; PROVIDED, HOWEVER, THAT ANY MATTERS WHICH WOULD NOT OTHERWISE BE THE SUBJECT OF A JURY TRIAL WILL BE UNAFFECTED BY THIS WAIVER. BORROWER HEREBY AGREES THAT THE PROVISIONS CONTAINED HEREIN HAVE BEEN FAIRLY NEGOTIATED ON AN ARM'S-LENGTH BASIS, WITH BORROWER AGREEING TO THE SAME KNOWINGLY AND BEING AFFORDED THE OPPORTUNITY TO HAVE ITS LEGAL COUNSEL CONSENT TO THE MATTERS CONTAINED HEREIN.

**8.     Future Advance**

In addition to the Indebtedness, this Security Instrument shall (to the extent allowed by Applicable Law) also secure payment of the principal, interest and other charges due on all future loans or advances made by Lender to Borrower (or any successor in interest to Borrower as the owner of all or any part of the Property) or any entity controlled by Borrower or Guarantor unless the Note evidencing such loan or advance specifically states that it is not secured by this Security Instrument ("Future Advances"), including all extensions, renewals and modifications of any such Future Advance.

**9.     Miscellaneous Provisions**

### 9.1    Commercial Purposes

Borrower represents and warrants to Lender that the Loan is for commercial purposes, and not for personal, household or consumer purposes. Borrower hereby waives, to the fullest extent permitted by Applicable Law, the benefits of California Civil Code Sections 2924.5, 2924.6, 2937, 2948.5, 2954.8, and 2954.9.

### 9.2    No Oral Change

This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the Borrower and Lender.

### 9.3    Liability

If Borrower consists of more than one Person, the obligations and liabilities of each such Person hereunder shall be joint and several. This Security Instrument shall be binding upon and inure to the benefit of Borrower and Lender and their respective successors and assigns forever.

### 9.4    Inapplicable Provisions

If any term, covenant or condition of the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Note and this Security Instrument shall be construed without such provision.

### 9.5    Duplicate Originals; Counterparts

This Security Instrument may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Security Instrument may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Security Instrument. The failure of any party hereto to execute this Security Instrument, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

### 9.6    Time is of the Essence

Borrower agrees that, with respect to each and every obligation and covenant contained in this Security Instrument, time is of the essence.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

**BORROWER:**

Chantilly Road, LLC, a California Limited Liability Company
    By: Leviathan, LLC, a California Limited Liability Company, its Sole Member
        By: The Kraken, LLC, a California Limited Liability Company, its Sole Member

By: _____    By: _____
Name: Diego Rudomin    Name: Adrian Rudomin
Title: Manager    Title: Manager
Date: 1/27/22    Date: 1/27/22

Address:

578 Washington BLvd #148
Marina Del Rey, CA 90292
Attention: Diego Rudomin

Organizational ID: 82-4745114

CA05.3 CALIFORNIA DEED OF TRUST, ASSIGNMENT OF LEASES
AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING
NOTARY ACKNOWLEDGEMENT

Page 33 of 39

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _California_

COUNTY OF _Los Angeles_

On _Jan. 27_, 20 _22_, before me, _Lisa Araque, Notary Public_
         Date                               Name of Notary Public

personally appeared _Diego Rudomin_
_Adrian Rudomin_
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

LISA ARAQUE
COMM. #2383770
Notary Public - California
Los Angeles County
My Comm. Expires Dec. 16, 2025

_Place Notary Seal and/or Stamp Above_

Signature of Notary Public

CA05.3 CALIFORNIA DEED OF TRUST, ASSIGNMENT OF LEASES
AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING
NOTARY ACKNOWLEDGEMENT

Page 34 of 39

**Exhibit A**
**Legal Description**

The land referred to is situated in the County of Los Angeles, City of Los Angeles, State of California, and is described as follows:

Lot 1 of Tract No. 13333, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 289 Pages 18 to 20 inclusive of Maps, in the Office of the County Recorder of said County.

APN: 4369-037-001

| APN | ADDRESS |
|---|---|
| 4369-037-001 | 1116 Chantilly Rd. Los Angeles, CA 90077 |

CA05.3 CALIFORNIA DEED OF TRUST, ASSIGNMENT OF LEASES
AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING
EXHIBIT A – LEGAL DESCRIPTION

Page 35 of 39

**Exhibit B**

**State Specific Provisions - California**

THIS EXHIBIT B is attached to and made a part of that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of **January 27, 2022** (as amended, restated, replaced, supplemented, or otherwise modified from time to time, the "Security Instrument"), executed and delivered by **Chantilly Road, LLC, a California Limited Liability Company organized and existing under the laws of California,** trustor for all purposes hereunder (individually or collectively as the context requires, together with their permitted successors and permitted assigns, "Borrower"), for the benefit of **Civic Financial Services, LLC, a California Limited Liability Company,** beneficiary for all purposes hereunder (together with all its successors and assigns, "Lender"). This Exhibit B is hereby incorporated by reference into and made a part of the Security Instrument as if fully set forth therein. All provisions and terms of the Security Instrument not otherwise amended or modified herein shall remain in full force and effect, and all definitions contained in the Security Instrument shall have the same meanings for purposes of this Exhibit B, except as otherwise specifically defined or modified hereby. In the event of any inconsistencies between the terms and provisions of this Exhibit B and the terms and provision of the other Sections and Articles of the Security Instrument, the terms and provisions of this Exhibit B shall govern and control.

The representations, warranties and covenants in this Exhibit B shall be continuing representations, warranties and covenants that shall be deemed to be made by Borrower throughout the term of the Loan, until paid in full.

(a)    In addition to the provisions of the Note, Borrower further agrees that, if Lender accepts a guarantee of only a portion of the Loan, Borrower waives its right under California Civil Code Section 2822(a) to designate the portion of the Loan which shall be satisfied by a guarantor's partial payment.

(b)    Except for matters covered by a duly established and implemented O&M Plan in respect of asbestos-containing materials, Borrower shall not cause or permit any Lien (whether or not such Lien has priority over the Lien created by this Security Instrument) upon the Property imposed pursuant to any Environmental Laws.

(c)    Borrower represents and warrants to Lender that, except as previously disclosed by Borrower to Lender in writing:

(1)    at the time of acquiring the Property, Borrower undertook all appropriate inquiry into the previous ownership and uses of the Property consistent with good commercial or customary practice and no evidence or indication came to light which would suggest that the Property is subject to any Environmental Condition or Environmental Cleanup; and

(2)    at least one of the following is true: (A) the Property is not located within 2,000 feet of a significant disposal of Hazardous Substances; or (B) if the Property is located within 2,000 feet of a significant disposal of Hazardous Substances, such

CA05.3 CALIFORNIA DEED OF TRUST, ASSIGNMENT OF LEASES
AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING
EXHIBIT B – STATE SPECIFIC PROVISIONS

Page 36 of 39

Hazardous Substances do not constitute a significant existing or potential hazard to present or future public health or safety on the Property. In any case, Borrower agrees to immediately disclose to Lender any significant disposal of Hazardous Substances that occurs or exists within 2,000 feet of the Property.

(d)     **Environmental Provisions.**

(1)     Without limiting any of the remedies provided in this Security Instrument, Borrower acknowledges and agrees that each of the provisions in the foregoing clauses (b), (c) and (d) and in Section 3.18 of this Security Instrument is an environmental provision (as defined in Section 736(f)(2) of the California Code of Civil Procedure) made by Borrower relating to real property security (the **"Environmental Provisions"**), and that to the extent applicable, Borrower's failure to comply with any of the Environmental Provisions will be a breach of contract that will entitle Lender to pursue the remedies provided by Section 736 of the California Code of Civil Procedure for the recovery of damages and for the enforcement of the Environmental Provisions, and such enforcement shall not constitute an action within the meaning of Section 726(a) of the California Code of Civil Procedure or constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Sections 580a, 580b, 580d, or 726(b) of the California Code of Civil Procedure.

(2)     In the event that any portion of the Property is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's or Trustee's rights and remedies under this Security Instrument, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its Lien on such environmentally impaired or affected portion of the Property, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Borrower to judgment and any other rights and remedies permitted by law. For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Borrower shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Property and Borrower knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release. Lender shall have the right under this Security Instrument to allocate amounts recovered on the Indebtedness first to those portions thereof other than damages and other amounts recoverable under California Code of Civil Procedure Section 736, and thereafter to damages and other amounts recoverable under said Section.

(e)     **Remedies Not Exclusive; Waiver.** Trustee and Lender shall have all powers, rights and remedies under Applicable Law whether or not specifically or generally granted or described in this Security Instrument. Nothing contained herein shall be construed to impair or to restrict

such powers, rights and remedies or to preclude any procedures or process otherwise available to trustees or beneficiaries under deeds of trust in the State of California. Trustee and Lender, and each of them, shall be entitled to enforce the payment and performance of any indebtedness or obligations secured hereby and to exercise all rights and powers under this Security Instrument or other agreement or any laws now or hereafter in force, notwithstanding the fact that some or all of the indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by mortgage, deed of trust, pledge, Lien, assignment or otherwise. Neither the acceptance of this Security Instrument nor its enforcement, whether by court action or pursuant to the power of sale or other powers contained herein, shall prejudice or in any manner affect Trustee's or Lender's right to realize upon or enforce any other rights or security now or hereafter held by Trustee or Lender. Trustee and Lender, and each of them, shall be entitled to enforce this Security Instrument and any other rights or security now or hereafter held by Lender or Trustee in such order and manner as they or either of them may in their absolute discretion determine. No remedy herein conferred upon or reserved to Trustee or Lender is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Every power or remedy given by any of this Security Instrument to Trustee or Lender, or to which either of them may be otherwise entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Lender, and either of them may pursue inconsistent remedies. By exercising or by failing to exercise any right, option or election hereunder, Lender shall not be deemed to have waived any provision hereof or to have released Borrower from any of the obligations secured hereby unless such waiver or release is in writing and signed by Lender. The waiver by Lender of Borrower's failure to perform or observe any term, covenant or condition referred to or contained herein to be performed or observed by Borrower shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent failure of Borrower to perform or observe the same or any other such term, covenant or condition referred to or contained herein, and no custom or practice which may develop between Borrower and Lender during the term hereof shall be deemed a waiver of or in any way affect the right of Lender to insist upon the performance by Borrower of the obligations secured hereby in strict accordance with the terms hereof.

   (f)    **Power of Sale**

        (1)    Should Lender elect to foreclose by exercise of the power of sale contained herein, Lender shall notify Trustee and shall, if required, deposit with Trustee the Note, the original or a certified copy of this Security Instrument, and such other documents, receipts and evidences of expenditures made and secured hereby as Trustee may require. Upon receipt of such notice from Lender, Trustee shall cause to be recorded and delivered to Borrower such notice as may then be required by law and by this Security Instrument. Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of

sale. Trustee shall deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any Person, including, without limitation, Borrower, Trustee or Lender, may purchase at such sale, and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(g)     **Right of Rescission.** Lender may from time to time rescind any notice of default or notice of sale before any Trustee's sale in accordance with the laws of the State of California. The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or Default or Event of Default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default to satisfy the obligations of this Security Instrument or secured hereby, nor otherwise affect any provision, covenant or condition of this Security Instrument or any of the rights, obligations or remedies of Trustee or Lender hereunder or thereunder.

(h)     **Full Reconveyance.** Upon written request of Lender stating that all sums secured hereby have been paid, upon surrender to Trustee of the Note and the original or a certified copy of this Security Instrument for cancellation and retention, and upon payment of its fees, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder. The recitals in such reconveyance of any matters of facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto.

CA05.3 CALIFORNIA DEED OF TRUST, ASSIGNMENT OF LEASES
AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING
EXHIBIT B – STATE SPECIFIC PROVISIONS

Page 39 of 39

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, Suite 1300, Los Angeles, CA 90067**

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *(date)* **July 8, 2025** , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Gabriel P Herrera**    gherrera@kmtg.com, bxiong@kmtg.com
- **Harris M Madnick**    hmmadnick@kramarmadnick.com
- **Richard Morin**    legal@rickmorin.net
- **Laila Rais**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;lbuchanan@marshackhays.com;alinares@ecf.courtdrive.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On *(date)* _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* **July 8, 2025** , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Personal Delivery**
Hon Scott Clarkson, U.S. Bankruptcy Judge
United States Bankruptcy Court, Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

**Via Email:**
Richard Morin, Attorney for Debtor
Email: legal@rickmorin.net

Gabriel P. Herrera, Attorney for CSPRF 2 LLC
Email: gherrera@kmtg.com

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 8, 2025 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the foregoing document entitled (*specify*):  ***REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION OF CIVIC REAL ESTATE HOLDINGS III, LLC FOR RELIEF FROM THE AUTOMATIC STAY AND FOR SANCTIONS FOR BAD FAITH FILING*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 8, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Kristin T Mihelic      *kristin.t.mihelic@usdoj.gov*
- United States Trustee (SA)      *ustpregion16.sa.ecf@usdoj.gov*

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **August 8, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Via Personal Delivery**
Honorable Scott Clarkson, U.S. Bankruptcy Judge
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

**Via Overnight Fedex**
<u>Attorney for Debtor</u>
Charles J Brown
Gellert Seitz Busenkell & Brown, LLC
1 Commerce Center
1201 N Orange St Suite 300
Wilmington, DE 19801

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 8, 2025 | MYRA KULICK | /s/ Myra Kulick |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

### EMAIL SERVICE LIST

**Devan De los Reyes:** *ddelosreyes@marshackhays.com, ddelosreyes@ecf.courtdrive.com, alinares@ecf.courtdrive.com*

**D Edward Hays:** *ehays@marshackhays.com, ehays@ecf.courtdrive.com; alinares@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com*

**Gabriel P Herrera:** *gherrera@kmtg.com, bxiong@kmtg.com*

**Harris M Madnick:** *hmmadnick@kramarmadnick.com*

**Richard Morin:** *legal@rickmorin.net*

**Laila Rais:** *lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; lbuchanan@marshackhays.com; alinares@ecf.courtdrive.com*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                     **F 9013-3.1.PROOF.SERVICE**
4917-9118-3963.1 07997.00002